**In re SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK d/b/a Saint Vincent Catholic Medical Centers et al., Debtor–Appellants.**

**Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers et al., Appellants,**

v.

**Jordana Goodman et al., Appellees.**

**Bankruptcy No. 05–B–14945(ASH). No. 09 Civ. 0375(VM).**

United States District Court, S.D. New York.

Sept. 16, 2009.

Andrew Mark Troop, Cadwalader, Wickersham & Taft LLP, New York City, for appellants.

Martin Rubenstein, Staten Island, NY, for appellees.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

In this appeal from a decision of the Bankruptcy Court, debtor-appellants are Saint Vincents Catholic Medical Centers of New York, doing business as Saint Vincent Catholic Medical Centers, and its affiliated reorganized debtors (collectively, "St. Vin-

cents" or "the Debtors"). Appellees are Jordana and Cory Goodman ("the Goodmans"), plaintiffs in a New York state medical malpractice action against Carol Mae Russell, M.D. ("Russell") and Marie Kimball, R.N. ("Kimball"), who were employed at St. Vincents in 2005. St. Vincents appeals from the Bankruptcy Court's decision, dated December 4, 2008 (the "Decision"), and order, also dated December 4, 2008 (the "Order"), denying St. Vincents's motion for an order "To Establish Procedures for Determining Covered Person Status for Certain Defendants, and to Enforce the Automatic Stay and Plan Injunction with Respect to Such Defendants" (the "Motion").

For the reasons stated below, the Decision and Order of the Bankruptcy Court are AFFIRMED.

### I. BACKGROUND [1]

#### A. FACTUAL BACKGROUND

The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on July 5, 2005 (the "Commencement Date"). By order dated January 25, 2006 (the "January 2006 Order"), the Bankruptcy Court set March 30, 2006 (the "Bar Date") as the deadline for filing proofs of claims (as defined in § 101(5) of title 11 of the Bankruptcy Code) against the Debtors that arose before the Commencement Date. Specifically, the January 2006 Order stated,

> [A]ny holder of a claim against one or more of the Debtors who is required, but fails to file a proof of such claim in accordance with this Order on or before the Bar Date shall be forever barred,

1. The following facts are derived from the appellate record. Below, references to the record are indicated by "SV—."

estopped, and enjoined from asserting such claim against the Debtors ... and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such claim....

(SV000739.)

The Debtors filed their plan of reorganization (the "Plan") in June 2005. The Bankruptcy Court entered a confirmation order approving the Plan (the "Confirmation Order") on July 27, 2007. The Plan took effect on August 30, 2007.

The Plan provides that certain claims for which no proof of claim was filed before the Bar Date will be enjoined. The Plan uses the terms "MedMal Claim" and "Covered Person" to describe these claims and the injunction. The Plan defines a MedMal Claim as:

[A]ny prepetition [that is, pre-Commencement Date] Claim relating to medical malpractice (i) asserted or which can be asserted against [St. Vincents] and/or [St. Vincents's] insurers on account of or related to [St. Vincents's] purported liability for an alleged act of medical malpractice or (ii) asserted or which can be asserted against any Covered Person with respect to or related to claims of alleged medical malpractice, in each case net of the proceeds of [St. Vincents's] third party insurance available to pay the holder of such Claim.

(Plan § 1.93, SV000017.)

The Plan defines a Covered Person as "any physician or employee of [St. Vincents] to the extent that such physician or employee has a right of indemnification against or from [St. Vincents] with respect to claims of alleged medical malpractice." (Plan § 1.42, SV000008.)

The Plan specifies that MedMal Claims for which timely proofs of claim were filed will be satisfied from one of several trusts established to pay for MedMal Claims (the "MedMal Trusts"). Such claims might ultimately not be satisfied in full; claimants will receive payment "in proportion to the unpaid portion" of their claims. (Plan §§ 4.8(b), 4.9(b), 4.10(b), SV000035–36.) Recovery on MedMal Claims will thus depend upon how many claims the MedMal Trusts must satisfy and how much funding the MedMal Trusts have.

Except for the claims specifically provided for in the Plan, the Plan enjoins claims against the Debtors as of the Effective Date:

Subject to 11.6(c), all Persons or entities who have held, hold, or may hold Claims against ... any or all of the Debtors and other parties in interest ... are permanently enjoined, on and after the Effective Date, with respect to all Claims against ... the Debtors from ... commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind ... against or affecting the Debtors ... or their property.

(Plan § 11.6(a), SV000089.)

Section 11.6(c) states:

Nothing in the Plan shall limit, modify or otherwise impair the rights of holders of timely filed Claims alleged to be for medical malpractice to seek payment for such Claims from the Debtors' insurance policies and/or from insurance policies for the benefit of a Covered Person which cover such Claims, it being the intent of the Plan to leave such timely filed Claims alleged to be for medical malpractice unimpaired except to the extent such Claims are MedMal Claims as defined by the Plan.

(Plan § 11.6(c), SV000090.)

The Plan also specifies that Covered Persons may still receive indemnification from St. Vincents:

If, not withstanding the injunction contained in this Section 11.6, any holder of a MedMal Claim shall assert such claim against a Covered Person, the injunction shall not preclude such Covered Person from asserting his or her right to indemnification against [St. Vincents].... Any indemnification amount owed to a Covered Person by [St. Vincents] on account of a MedMal Claim shall be paid from the appropriate MedMal Trust.

(Plan § 11.6(d), SV000089)

The Confirmation Order provides that pursuant to §§ 11.6(a) and (c) of the Plan, all Persons or entities who have held, hold, or may hold Claims against ... the Debtors ... are *permanently enjoined,* on and after the Effective Date, with respect to all Claims against and Equity Interests in the Debtors from ... commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind ... against or affecting the Debtors ... or their property.

(Confirmation Order ¶ 39, SV000489–90) (emphasis in original).

## B. *PROCEDURAL HISTORY*

The Debtors filed the Motion on November 10, 2008, seeking an order to establish procedures to bar medical malpractice claims asserted against any Covered Persons. The Debtors argued that holders of medical malpractice claims against Covered Persons arising before the Commencement Date who did not file proofs of claim before the Bar Date were "permanently enjoined by the Plan Injunction and the Stay from asserting such claims against Covered Persons." (Motion at 6, SV000747.)

On November 18, 2008, the Goodmans filed an affidavit by their attorney, Martin Rubenstein (the "Affidavit"), as well as a memorandum of law, in opposition to the Motion. The Goodmans argued that their state tort action against Russell and Kimball for negligence and medical malpractice, which was filed in October 2007, was not barred by any of the Bankruptcy Court's orders in the St. Vincents bankruptcy matter. The Goodmans pointed out that their claim was against Russell and Kimball, not St. Vincents; that the bankruptcy of St. Vincents did not discharge claims against St. Vincents's individual employees; and that St. Vincents's employees have no right to indemnification from St. Vincents for damages caused by the employees' own negligence.

The Bankruptcy Court held a hearing on the Motion on November 20, 2008. The Bankruptcy Court denied the Motion in a decision dated December 4, 2008. The Bankruptcy Court found that "[n]othing in the Debtors' Plan, or the Bankruptcy Code, or any order of this Court enjoins or otherwise bars holders of MedMal Claims from suing Covered Persons." (SV000855.) The Bankruptcy Court explained, "This Decision is published to deny the Motion and to repudiate the premise and postulate on which the Motion is based, which have apparently been asserted by the Debtors against MedMal Claimants suing Covered Persons in other state or federal courts." (*Id.*)

The Bankruptcy Court characterized the issue raised by the Motion as concerning "MedMal Claimants who did not timely file claims in the Debtors' bankruptcy on or before the Bar Date." (SV000856.) The Bankruptcy Court observed that these Claimants "are barred from asserting their claims against the Debtors or the Debtors' estates and are barred from any recovery from the MedMal Trusts." (SV000856–57.) These claimants' "only recourse ... is to assert their claims for medical malpractice against the responsible medical professionals—physicians, nurses—wheth-

er employed by the Debtors or not and, if successful, to recover damages from whatever insurance may be available to the defendant professionals or from their personal assets." (SV000857.) The Bankruptcy Court noted that "defendant professionals who have a right of indemnification against the Debtors fall within the definition of 'Covered Person,'" and that "[s]ince the Plan provides no bar date on Covered Persons' rights to indemnification from the Debtors, the Plan states that Covered Persons' rights to indemnification will be satisfied out of the MedMal Trusts." (*Id.*)

The Bankruptcy Court rejected the premise of the Motion, which was that medical malpractice claims against Covered Persons were barred by the Plan if those claimants had failed to file timely proofs of claim. The Bankruptcy Court pointed out that Covered Persons are third parties, and that the Bankruptcy Code does not authorize the "release or discharge of claims asserted against non-debtor third parties …, or an injunction barring claims against third parties seeking to impose liability for the third parties' own derelictions." (SV000858 (citation omitted).) With respect to the Debtors' contention that "claimants were permanently enjoined from pursuing any Non–Timely Prepetition MedMal Claims or asserting such claims against … Covered Persons," the Bankruptcy Court emphasized that "the very concept of a 'Non–Timely Prepetition MedMal Claim against a Covered Person' is simply nonsensical … because there is no bar order and no time limitation with respect to such claims imposed by the Bankruptcy Code, the Plan, the Confirmation Order or any other order of this Court." (SV000862.)

The Debtors acknowledged that § 11.6(d) of the Plan "continue[s] the rights of Covered Persons to seek indemnification against or from [St. Vincents] for prepetition medical malpractice claims, regardless of whether such claims are Non–Timely Prepetition MedMal Claims." (SV000861 (*quoting* Motion, at 6).) However, the Debtors characterized § 11.6(d) as "a backstop should the Plan Injunction and Stay not properly be extended to a Covered Person." (*Id.*) The Bankruptcy Court disagreed, finding that, contrary to the Debtors' contentions, "[a] medical malpractice claim against a Covered Person is *not* 'the equivalent of a claim against the debtors'—it is a claim against a Covered Person and nothing more." (SV000861 (emphasis in original).)

By order dated December 4, 2008, the Bankruptcy Court denied the Debtors' Motion and ordered the Debtors to

promptly provide copies of the [December 4, 2008] Decision to all counsel for the parties and to the respective courts in all state and federal courts in which medical malpractice claims have been or may in the future be asserted against Covered Persons … and in which either the Debtors or the defendant Covered Persons have asserted arguments seeking to bar the medical malpractice claims asserted against Covered Persons based upon arguments such as the arguments asserted in the Motion.

(Order, SV000865.) The Debtors appealed the Decision and Order to this Court.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

A district court reviews a bankruptcy court's factual findings under a clearly erroneous standard and reviews its legal conclusions de novo. *See In re Duffy*, 344 B.R. 237, 242 (S.D.N.Y.2006).

### B. *APPLICATION*

The Debtors characterize the Motion as a request that the Bankruptcy Court "es-

tablish procedures by which the Bankruptcy Court could, on an expedited basis ... determine whether an individual defendant in a medical malpractice action, pending in a court other than the Bankruptcy Court, is a '*Covered Person,*' as that term is defined in the [Plan]." (Brief of Appellants ("Debtors' Br.") at 1.) The Motion also sought procedures for expedited "orders enforcing the permanent injunction established by the Plan (the '*Plan Injunction*') and the automatic stay (the '*Stay*') provided by [the Bankruptcy Code] and continued by the Plan." (*Id.* (emphasis in original).) The Debtors argue in this appeal that although "the issue of the scope of the Plan [Injunction]and Stay was not properly before the Bankruptcy Court," the Bankruptcy Court wrongly held that "neither the Plan Injunction nor the Stay bars actions against Covered Persons." (*Id.*) The Debtors also object to the Order's requirement that the Debtors provide copies of the Decision to counsel and courts in medical malpractice actions where Debtors or Covered Persons have sought to bar those actions, arguing that the Order "improperly seeks to provide guidance to other courts on how to interpret the Plan," (*id.*), and that "the Bankruptcy Court exceeded its authority," (*id.* at 2).

The Debtors maintain that the Plan and the Confirmation Order provide for an injunction against claims filed against Covered Persons if proofs of claim were not filed before the Bar Date, and that the Bankruptcy Court improperly reconsidered and reinterpreted the Plan and Confirmation Order when it found that claims against Covered Persons were not enjoined.[2] The Debtors also argue that the

Bankruptcy Court's "new interpretation" of the Plan "is inconsistent with the express language of the Plan, the Disclosure Statement ..., the Confirmation Order, the Findings, and the intent of the numerous parties" involved in negotiating the Plan. (*Id.*)

The Court finds that the Bankruptcy Court properly considered the issues presented by the Motion and correctly interpreted the Plan to permit claims against Covered Persons.

1. *The Bankruptcy Court Did Not Reconsider the Plan or Issue an Advisory Opinion*

The Debtors contend that the Motion did not require the Bankruptcy Court to reinterpret the Plan's provisions regarding claims against Covered Persons. The Court disagrees with the Debtors' characterization and assessment of the Bankruptcy Court's Decision and Order. The Debtors argue that the December 4, 2008 decision is an advisory opinion, and that the Bankruptcy Court effectively granted relief sua sponte from a judgment or order pursuant to Federal Rule of Civil Procedure 60(b) when it reconsidered the meaning and scope of the Plan. This argument is undermined by the plain language of the Motion, which states that the Debtors "hereby move for an order establishing procedures for determining whether certain defendants in medical malpractice actions are 'Covered Persons' ... and providing for the enforcement of the permanent injunction established by the Plan ... and the automatic stay ... with respect to such Covered Persons." (Motion at 1–2, SV000742–43.)

---

**2.** The Court notes that the MedMal Trust Monitor (the "Monitor") has submitted a brief in support of the Debtors' appeal. The Monitor joined in the Debtors' request for relief in the Motion, and was indicated as a party in interest in the Debtors' notice of appeal. The

Monitor's brief contains substantially the same arguments as the Debtors' brief on appeal, and the Court will not address the arguments in the Monitor's brief, except when specifically referenced.

■ This request for procedures to determine whether certain persons are Covered Persons, and to enforce an injunction and stay against claimants suing persons found to be Covered Persons, necessarily requires a determination of which persons may be considered Covered Persons, and whether claims against those persons are subject to the injunction and stay in question. A court cannot establish procedures for enforcing an injunction against a group of claimants without first determining that the injunction actually applies to those claimants. Here, the Bankruptcy Court was forced to consider the question of whether lawsuits against doctors and nurses employed by the Debtors could be enjoined pursuant to the injunction and stay in the Plan: the Debtors represented to the Bankruptcy Court that any lawsuit against a doctor or nurse who had a right of indemnification from the Debtors was barred under the Plan, and asked the Bankruptcy Court to formulate procedures for identifying and enjoining such lawsuits. It is unreasonable to expect that the Bankruptcy Court would or should merely accept a party's representation that a bankruptcy plan forbids a certain class of lawsuits without assessing the actual terms of that bankruptcy plan. "[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* —— U.S. ——, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009) (*citing Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). The Debtors' arguments in this regard are therefore entirely without merit.

## 2. *Claims Against Covered Persons Are Not Enjoined Under the Plan or Confirmation Order*

The Bankruptcy Court determined that MedMal Claims against Covered Persons for which no timely proof of claim had been filed were not enjoined by the Plan or Confirmation Order, even if the Debtors would ultimately need to indemnify Covered Persons with respect to such claims, because nothing in the Plan or Confirmation Order barred holders of MedMal Claims from suing Covered Persons. In their brief on appeal, the Debtors highlight language in the Plan that enjoins persons with claims against the Debtor "from ... commencing, conducting, or continuing in any manner, *directly or indirectly,* any suit, action or other proceeding ... against or affecting the Debtors ... *or their property.*" (Debtors' Br. at 16–17 (*quoting* Plan § 11.6(a)) (emphasis added by Debtors' Br.).) The key to the Debtors' argument is their insistence that "[a]ll actions against Covered Persons constitute indirect actions" against the Debtors. (*Id.* at 17.) The basis of this interpretation appears to be the permission the Plan gives to Covered Persons to continue to assert their rights to indemnification against St. Vincents in the event that a judgment results from a medical malpractice claim brought against a Covered Person, as provided for in § 11.6(d).

■ The Court agrees with the Bankruptcy Court that the January 2006 Order establishing the Bar Date, the Confirmation Order, and the Plan do not enjoin medical malpractice claims against Covered Persons, even if no timely proof of claim was filed. The language of the January 2006 Order is very clear: "any holder of a claim against ... the Debtors" who fails to file a timely proof of claim "shall be forever barred, estopped, and enjoined" from proceeding with such a claim. (SV000739.) Covered Persons are third parties; they are not equivalent to "the Debtors."

The Court does not accept the Debtors' argument that a claim against a Covered Person is an indirect claim against the Debtors such that the claim should be enjoined. The January 2006 Order gave no indication that persons with claims against Covered Persons would need to file proofs of claim and would only be allowed to recover from the MedMal Trusts. Nor did it specify that claims against Covered Persons who may have indemnification rights against the Debtors are to be considered "indirect" claims against the Debtors.

In addition, nothing in the Plan enjoins claims against Covered Persons. Section 11.6(a) enjoins "Claims against ... the Debtors," (Plan § 11.6(a), SV000089), and does not mention claims against Covered Persons. In its brief in support of the Debtors, the Monitor argues that the Plan provides that holders of MedMal Claims who did not file timely proofs of claim "shall not be entitled to any recovery under the Plan or from any of the Debtors' insurance." (Plan §§ 4.8(b), 4.9(b), 4.10(b), SV000036–37.) This language does not support the Debtors' argument because it does not prohibit holders of MedMal Claims from recovering from Covered Persons.

Even if the Court were to accept the Debtors' argument that the January 2006 Order or the Plan enjoins claims against Covered Persons, the claims against St. Vincents's employees would be enjoined only insofar as they are Covered Persons—that is, insofar as they have rights of indemnification against St. Vincents for those claims. The Court has no information regarding the contractual indemnification obligations between St. Vincents and its employees; there could be any number of requirements that must be demonstrated through litigation before a right to indemnification could be established, including a requirement that the doctor or nurse did not act with gross negligence. *See, e.g., American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 351 F.Supp.2d 79, 99 (S.D.N.Y.2004) (contractual right to indemnity for acts constituting gross negligence or wilful misconduct is void as against public policy, under New York law); *In re WorldCom, Inc. ERISA Litig.,* 339 F.Supp.2d 561, 566 (S.D.N.Y. 2004) (party had "no right to indemnification under the terms of the contract if it engaged in willful misconduct or gross negligence").

It would be inappropriate to enjoin any or all medical malpractice claims against St. Vincents's employees if there is no way to determine at the outset of such actions whether the doctor or nurse in question has a right to indemnification, and is thus a Covered Person. This concern prompted the Bankruptcy Court to order the Debtors to disseminate its Decision and Order to counsel and courts in malpractice cases against Covered Persons where the Debtors or the defendant Covered Persons have sought to bar those cases based on the Debtors' interpretation of the Plan. The Court affirms this portion of the Order, as it finds no legal error here.

■ Finally, the Court notes that the rationale for the nondebtor release sought by the Debtors is questionable at best. The Court is aware that in some instances bankruptcy courts have approved plans enjoining claims against third parties for which a debtor may bear some responsibility because of indemnity or contribution requirements. *See, e.g., In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 142 (2d Cir.2005) (*citing Menard–Sanford v. Mabey (In re A.H. Robins Co.),* 880 F.2d 694, 701 (4th Cir.1989)); *In re Adelphia Commc'ns Corp.,* 368 B.R. 140, 268 (Bankr.S.D.N.Y.2007) (approving nondebtor releases "[t]o the extent that the third

party releases are congruent with the indemnification obligations, and the Debtors would be liable for any liability imposed on such persons"). However, "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan." *Metromedia*, 416 F.3d at 143; *In re Continental Airlines*, 203 F.3d 203, 216 (3d Cir.2000) ("that the reorganized Continental Airlines might face an indemnity claim sometime in the future, in some unspecified amount, does not make the release and permanent injunction of Plaintiffs' claims 'necessary' to ensure the success of the Continental Debtors' reorganization"). The Bankruptcy Court did not make any findings that discharging the liability of third-party Covered Persons would be important to the Plan. *See Metromedia*, 416 F.3d at 142. Nor did the Bankruptcy Court find that the third-party Covered Persons had given substantial consideration to the estate; that enjoined claims against Covered Persons would be channeled to a settlement fund, and not just extinguished; or that the Plan provided for payment of such claims in any way. *See id.* at 142. As the *Metromedia* Court observed, "No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique." *Id.* at 142. It is far from clear that such circumstances exist here, even if the Plan and Confirmation Order did authorize the nondebtor release the Debtors argue for here.

The Debtors cite the Bankruptcy Court's findings in support of confirmation of the Plan (the "Findings") as demonstrating an awareness that recovery for MedMal Claims against Covered Persons would be limited. However, the portions of the Findings cited by the Debtors refer to a "limitation" on the ability to recover from Covered Persons, and a prohibition on "the substitution of an indemnity claim for a direct claim" while still allowing claimants to "prove [Covered Persons'] liability and the amount of their liability." (Debtors' Br. at 19 (*quoting* Findings ¶ 44).) The Findings do not reflect an explicit understanding by the Bankruptcy Court that the Plan would enjoin claims against Covered Persons. The Debtors also cite declarations and a memorandum in support of confirmation of the Plan that were submitted to the Bankruptcy Court, as well as statements made to the Bankruptcy Court at a hearing to consider confirmation of the Plan. The statements in these documents and at the hearing do evidence an understanding on the part of the Debtors that claims against Covered Persons would be enjoined, but it is the Bankruptcy Court's Confirmation Order and subsequent interpretations of the Plan that control. As noted above, the Bankruptcy Court had jurisdiction to "interpret and enforce its own prior orders." *Travelers Indem.*, 129 S.Ct. at 2205.

The Court is mindful of the Debtors' concern that indemnification payments from the MedMal Trusts to Covered Persons for judgments in actions where no timely proofs of claim were filed could potentially strain the resources of the MedMal Trusts, which were established to compensate claims related to timely filed proofs of claim. Nevertheless, this Court cannot find that the January 2006 Order, the Plan, or the Confirmation Order enjoin claims against Covered Persons. The Decision and Order of the Bankruptcy Court are therefore affirmed.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the decision of the Bankruptcy Court dated December 4, 2008

and the order of the Bankruptcy Court dated December 4, 2008 that are the subjects of the appeal in this action are AFFIRMED.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**