NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. HI-11-1635-PaJuH |
| | ) |
| SUNRA COFFEE, LLC, | ) Bankr. No. 09-01909 |
| | ) |
| Debtor. | ) Adv. Proc. 10-90009 |
| _____ | ) |
| | ) |
| MICHAEL NEKOBA, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| HAWAII NATIONAL BANCSHARES, INC., | ) |
| dba HAWAII NATIONAL BANK, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Submitted Without Oral Argument
on July 20, 2012[2]

Filed - August 21, 2012

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Chief Bankruptcy Judge, Presiding

Appearances:    Jerrold K. Guben and Jeffery Steven Flores of
O'Connor Playdon & Guben LLP on brief for
Appellant; Keith Y. Yamada and Theodore D. C. Young
of Cades Schutte LLP on brief for Appellee.

Before: PAPPAS, JURY and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Pursuant to Rule 8012, in an order entered on May 14, 2012, a motions panel unanimously determined after examination of the briefs and record that oral argument was not needed.

-1-

Appellant Michael Nekoba ("Nekoba") appeals a final judgment and subsequent charging order entered by the bankruptcy court in favor of Appellee Hawaii National Bank ("HNB") and against him. We AFFIRM.

**I. FACTS**

The facts in this case are undisputed.

Debtor Sunra Coffee, LLC ("Sunra") owns and operates coffee farms and engages in the production of coffee products in Hawaii. Nekoba is a certified public accountant and member of Sunra. Among Sunra's properties was a 214-acre development known as the Royal Hualalai Gardens (the "Property"). Sunra obtained several loans from HNB secured by mortgages against the Property. Nekoba signed commercial guarantees of Sunra's obligations to HNB on the loans secured by the Property. ER at 34-36.

HNB filed a complaint in Hawaii state court on December 3, 2008, alleging that Sunra defaulted on its obligations to HNB under the notes and mortgages. ER at 1. Hawaii Nat'l Bank v. Sunra Coffee, civ. no. 08-1-00377 (Third Circuit, State of Hawaii) (the "State Court Action"). Nekoba was named as a defendant in the State Court Action, and was served with a summons and complaint. ER at 32, EER at 10. Nekoba concedes that he did not file a counterclaim against HNB, nor a cross-claim against Sunra for indemnification or contribution, in the State Court Action. Nekoba Op. Br. at 3. Indeed, Nekoba made no appearance at all in the State Court Action. ER at 34. On August 3, 2009, the state court entered a default judgment against Sunra and Nekoba for $9,249,245.89, plus interest from February 20, 2009, of $4,233.90 per diem. ER at 33, 36.

-2-

Sunra filed a petition for relief under chapter 11 on August 21, 2009. An official committee of unsecured creditors was appointed on September 2, 2009 (the "Committee"). Bankr. dkt. no. 28.

HNB filed a motion for relief from the automatic stay on December 1, 2009, seeking an order allowing it to proceed to foreclose on the Property. Without opposition, the bankruptcy court granted the motion on January 26, 2010. ER at 41. The order granting relief from stay explicitly stated that the stay did not apply to Nekoba. ER at 44.

On January 19, 2010, the Committee filed a motion for appointment of a chapter 11 trustee. Bankr. dkt. no. 166. The bankruptcy court granted the motion on February 18, 2010. Bankr. dkt. no. 185. David Farmer ("Farmer") was appointed to serve as chapter 11 trustee on February 22, 2010. Bankr. dkt. nos. 189, 194.

Farmer immediately removed the State Court Action to the bankruptcy court on February 24, 2010. See Rule 9027(a)(2)(B). ER at 48. In the removal notice, Farmer consented to the entry of final orders and a judgment by the bankruptcy court. ER at 51. The removal notice was served on Nekoba. EER at 28. Nekoba did not oppose the removal.

The Property was auctioned at a foreclosure sale on March 30, 2010. ER at 71. HNB submitted the only bid for $9.5 million and purchased the Property. Id. The bankruptcy court approved the sale of the Property to HNB on April 30, 2010, as part of the removed action. ER at 78. Although Nekoba had received notice of the hearing concerning approval of the sale, he did not appear

-3-

either in person or by counsel. ER at 254. The bankruptcy court issued a Writ of Possession on June 15, 2010, allowing HNB to take Possession of the Property. ER at 307.

HNB then sought the entry of a deficiency judgment against Sunra and Nekoba for $2,405,247.82, the difference between the total amount of the judgment debt, including interest and attorney's fees of $11,905,247.82, and the credit bid it made at the foreclosure sale of $9,500,000. ER at 339. No opposition to this request was filed by either Sunray or Nekoba, nor did they appear at the hearing on HNB's motion for the deficiency judgment held on September 17, 2010. ER at 417. The bankruptcy court granted the unopposed motion on September 23, 2010; the Order and Final Judgment Re: HNB's Motion for Deficiency Judgment and Attorneys' Fees and Costs provided, in part, that the court:

> Approves HNB's request for a deficiency judgment, and this document shall constitute entry of judgment in favor of Plaintiff HNB and against each of the named defendants, to wit: Defendants Sunra Coffee, LLC, ADI LLC, and Michael Nekoba, aka Michael H. Nekoba, in the amount of $2,405,247.82. This order shall constitute a final judgment[.]

Judgment, September 23, 2010 at 2-3, ER at 417-18 (the "Judgment"). The Judgment was not appealed, nor was collection of the Judgment stayed. ER at 418. No party, including Nekoba, has ever sought review or reconsideration of the Judgment.

Although a named defendant in the adversary proceeding who was served with all papers and pleadings filed in the proceeding, Nekoba never participated, personally or through counsel, until he was compelled to attend his oral examination in January 2011. At the examination, Nekoba disclosed his assets, including several properties he purportedly held in tenancy by the entireties with

-4-

his spouse. Nekoba suggested that those properties, including those owned by Tropic Land, LLC, were exempt from execution because he and his wife were not jointly obligated on his debt to HNB. ER at 440.

On March 7, 2011, HNB filed a motion for entry of a charging Order against Nekoba's membership interest in Tropic Land, LLC, for satisfaction of the Judgment debt. A hearing on the motion was scheduled for April 19, 2011. ER at 421. Meanwhile, on March 14, 2011, the bankruptcy court granted HNB's ex parte motion for a Writ of Execution After Judgment directed at Nekoba's personal and real property. ER at 430.

On April 4, 2011, Nekoba filed an Opposition to the issuance of the Writ of Execution and requested an evidentiary hearing. Nekoba argued that property held by tenancy by the entireties must be excluded from satisfaction of HNB's judgment against him alone. ER at 441. Nekoba requested that the bankruptcy court delay execution of the Writ pending an evidentiary hearing where it could "determine which of the claimed tenancy by the entireties personal properties holding[s] are excluded from execution by the judgment creditors[.]" ER at 444. On April 19, 2011, the court granted Nekoba's request for an evidentiary hearing to be held July 5, 2011. Adv. dkt. nos. 114, 115.

On June 23, 2011, the United States Supreme Court decided Stern v. Marshall, 121 S.Ct. 2594 (2011).

HNB and Nekoba submitted briefs to the bankruptcy court. HNB argued that, as to Tropic Land, LLC, Nekoba had owned his member interest in that company for five years as an individual before transferring it to him and his wife on September 30, 2010, seven

-5-

days after entry of the Judgment against him on September 23, 2010. ER at 450. Nekoba's position was that the funds used to purchase the Tropic Land, LLC, interests came from other tenancy by the entireties interests. ER at 462.

At the evidentiary hearing on July 5, 2011, Nekoba for the first time challenged the subject matter jurisdiction and Constitutional authority of the bankruptcy court to enter the Judgment against him based upon Stern v. Marshall. Hr'g Tr. 4:10-23, July 5, 2011, ER at 474. Following Nekoba's testimony regarding his various assets, the court invited the parties to submit written closing arguments. Hr'g Tr. 100:23, ER at 570.

HNB submitted its closing arguments on July 22, 2011, presenting its arguments why Nekoba's assets were subject to seizure by execution. HNB's brief made no reference to Nekoba's Stern v. Marshall argument. ER at 590. In contrast, Nekoba's closing argument concentrated solely on the Stern v. Marshall issue. ER at 599.

The bankruptcy court entered detailed Findings of Fact and Conclusions of Law on October 18, 2011. ER at 740. In addition to ruling against Nekoba on the merits, the court decided that Neboka could not challenge the court's jurisdiction or authority to enter a judgment once it has become final:

> A party cannot challenge the court's subject matter jurisdiction after the judgment has become final. Travelers Indem. Co. v. Bailey, [557 U.S. 137, 152-53 (2009)]; Ins. Corp. Of Ireland v. Compagnie des Bauxite de Guinee, 456 U.S.694, 702 n.9 (1982); Chicot County Drainage Dist. V. Baxter State Bank, 308 U.S. 371, 375 (1940). Mr. Nekoba did not appeal the [Judgment] and it is now final. Mr. Nekoba can no longer question the court's subject matter jurisdiction.

Conclusion of Law 3b, October 18, 2011, ER at 748.

-6-

As to the constitutional authority of a bankruptcy judge to enter a final judgment in these proceedings, the court ruled:

> Stern v. Marshall does not limit the bankruptcy court's subject matter jurisdiction. . . . Stern v. Marshall deals with the power of the bankruptcy court to enter a final judgment. . . . [E]ven under Stern v. Marshall, the bankruptcy court can enter judgment against a consenting party.

Conclusion of Law 3a, October 18, 2011. ER at 747-48. The court went on to observe that the adversary proceeding itself was clearly a core proceeding, because it primarily dealt with HNB's claim against the debtor. Then the court ruled that, even if the proceeding was non-core as to Nekoba, he had impliedly consented by his conduct. Conclusion of Law 9b, October 18, 2011.

On November 11, 2011, the bankruptcy court entered its Order Granting Plaintiff's Motion for Charging Order and Order Sustaining in Part and Overruling in Part Defendant Michael Nekoba's Opposition to Plaintiff's Ex Parte Motion for Writ of Execution After Judgment (the "Charging Order"). ER at 789. The court ruled that HNB was entitled to avoidance of the transfer of Nekoba's interest in Tropic Land, LLC, and that the interests of Nekoba "shall be used to satisfy the Judgment in the amount of $2,405, 247.82." ER at 791.

Nekoba filed a timely appeal of the order on November 9, 2011.

## II. JURISDICTION

As discussed below, Nekoba challenges the subject matter jurisdiction of the bankruptcy court and Constitutional power to enter the Judgment in this adversary proceeding. Nekoba has not challenged the Panel's jurisdiction to decide this appeal under

-7-

28 U.S.C. § 158.

### III. ISSUE

Whether the bankruptcy court erred in holding that Nekoba could not challenge the court's subject matter jurisdiction to enter the Judgment after it became final.

### IV. STANDARD OF REVIEW

We review de novo questions involving the subject matter jurisdiction of the bankruptcy court. Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 423 (9th Cir. BAP 2011).

### V. DISCUSSION

In this appeal, Nekoba asserts that, under Stern v. Marshall, a bankruptcy judge, as an Article I judge, does not have subject matter jurisdiction to adjudicate state law "private right" disputes between two nondebtor parties, and therefore, the bankruptcy court erred when it entered the order in this case granting HNB a money judgment against Neboka.[3] However, we need

---

[3] In his Opening Brief, Nekoba invokes various statements in Stern to support his attack that an Article I judge cannot enter a final judgment in a non-core adversary proceeding in which he did not consent to entry of a final judgment. The attack, in the opening brief, appears to fall into two areas. First, Nekoba suggests that the bankruptcy court did not have any subject matter jurisdiction, because the court did not have "related to" jurisdiction and, if it did, he did not consent. Second, applying Stern, an Article I judge cannot enter final judgment under the facts of this case. In short, Nekoba's Constitutional argument in the Opening Brief is unfocused, simply that Stern does not allow entry of final judgment in a non-core case where the parties do not consent to entry of that judgment. Such an overbroad interpretation is not supported in Stern.

Nekoba goes into a more precise Constitutional challenge in his Reply Brief, where he shifts his attention from the final judgment to the Writ of Execution, arguing in more specific detail how entry of an order in a "supplementary proceeding" runs afoul
(continued...)

-8-

not endorse nor reject Neboka's contention, because we agree with the bankruptcy court that it is simply too late for Neboka to collaterally attack the bankruptcy court's subject matter jurisdiction, because the Judgment is clearly final.

First, Nekoba's assertion that the Supreme Court decision in Stern was somehow a wide-ranging limitation on the authority of Article I courts to adjudicate private rights disputes overstates the Court's holdings in that limited decision. In Stern, the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim" in a bankruptcy case. Stern, 131 S.Ct. at 2620. The Court instructed that, though 28 U.S.C. § 157(b)(2)(C) expressly authorized the bankruptcy court to decide the merits of the bankruptcy estate's counterclaim against a creditor, such an exercise of judicial power by an Article I bankruptcy judge violated the Constitution, because "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at 2618.

However, in Stern, the Court emphasized that its holding was a "narrow one," id. at 2620, that the constitutional infirmity in the bankruptcy court's reliance upon 28 U.S.C. § 157(b)(2)(C) was

[3](...continued)
of Stern. But as we discuss below, his argument is too little, too late, and we will not examine arguments that were neither raised in the bankruptcy court nor in the appellant's opening brief.

limited to "one isolated respect," id., that the Court doubted its decision would generate significant practical consequences, and that the Court "[did] not think that removal of counterclaims such as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . ." Id. And more importantly for our purposes in this appeal, Stern also makes clear that 28 U.S.C. § 157, the statute considered by the Court, merely "allocates the authority to enter final judgment between the bankruptcy court and the district court," and contrary to Nekoba's position here, "[t]hat allocation does not implicate questions of subject matter jurisdiction." Id. at 2607.

Nekoba's arguments invoking Stern are all premised on an assumption that a Constitutional challenge to the bankruptcy court's subject matter jurisdiction may be advanced at any stage of the proceedings, including an appeal from an order entered long after the judgment in question became final. Nekoba's Op. Br. at 14. Nekoba provides unconvincing authority for this assumption,[4] however, and it would appear to directly contradict a well-

_____

[4] Nekoba, in the Opening Br. at 14, argues that under Civil Rule 60(b)(4), "a party may challenge the subject matter jurisdiction of the Court at any time." Nekoba badly misconstrues this provision. It does not give the litigant an unfettered right to challenge jurisdiction "at any time." It simply provides the proper (and only) way of challenging subject matter jurisdiction after entry of final judgment. United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 1370 (2010) (quoting Traveler's Indem. Co., 129 S.Ct at 2198, for its holding that final unappealed judgments "stand in the way of challenging enforceability," but observing that Rule 60(b)(4) allows a party to seek relief from a final judgment that may be void for jurisdictional error). Indeed, the bankruptcy court in this appeal ruled that Neboka could not challenge subject matter jurisdiction long after entry of an unappealed final judgment except through a Civil Rule 60(b)(4) motion, which Nekoba never brought. Conclusions of Law ¶¶ 2 and 3b. We agree with the bankruptcy court's ruling.

-10-

established rule.

There is no timeless right to challenge the subject matter jurisdiction of the trial court that entered a final judgment against the challenger. Indeed, the Supreme Court has squarely held that, subject to narrow exceptions not applicable here, a bankruptcy court's final orders are not subject to a later, collateral attack based upon a challenge to its subject matter jurisdiction. Traveler's Indem. Co. v. Bailey, 557 U.S. 137, 147 (2009). As long as a party to an action is given a fair chance to challenge the bankruptcy court's subject matter jurisdiction during the proceedings, it cannot attack it later by resisting the enforceability of its orders. Id. at 2206, citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."); Chicot County Drainage Dist. V. Baxter State Bank, 308 U.S. 371, 375 (1940). The Ninth Circuit has amplified this rule in several of its decisions. See, e.g., City of S. Pasadena v. Mineta, 284 F.3d 1154, 1157 (9th Cir. 2002) ("Even objections to subject matter jurisdiction, which may be raised at any time, even on appeal, . . . may not be raised for the first time by way of collateral challenge[.]"); Trulis v. Barton, 107 F.3d 685, 691 (9th Cir. 1995) ("Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter.").

Put another way, Nekoba's subject matter jurisdiction

-11-

challenge in this appeal comes too late. As the Supreme Court has noted, Constitutional challenges to judgments must be timely: "'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" Stern, 131 S.Ct. at 2608, quoting United States v. Olano, 507 U.S. 725, 731 (1993).

In this case, it is unquestioned that Nekoba had ample opportunity to appear in the adversary proceeding and assert a challenge to the bankruptcy court's exercise of subject matter jurisdiction over HNB's claims against him. He did not oppose removal of the state court action to the bankruptcy court. Likewise, though he was give notice of the requests for entry of both the original and deficiency judgment against him, he did not object. When entered, he did not appeal those judgments. Instead, his first appearance in the bankruptcy court was six months later when he sought an evidentiary hearing, not to challenge any judgment, but to seek a ruling that certain properties he owned with his wife were not subject to the Writ of Execution issued in favor of HNB. It was not until the July 5, 2011 hearing, and the Supreme Court's decision in Stern, that he finally altered his position addressing the merits of the proceedings and attacked the bankruptcy court's subject matter jurisdiction.

Nekoba seemingly recognizes that his attack on the bankruptcy court's jurisdiction to enter the judgments is time-barred. Apparently to counter this, on appeal, he now tardily advances an

-12-

argument that the bankruptcy court lacked jurisdiction to enter the post-judgment order:

> While the September 23, 2010 Final Judgment in Adv. No. 10-9009 was rendered before Stern v. Marshall, and might not be subject to challenge even if an Article I judge entered judgment against Mr. Nekoba, that is not the case with the enforcement of the judgment, which began on December 30, 2010, when HNB initiated its Rule 69 supplemental proceedings.

Appellant's Reply Br. at 11. This is the first time in the bankruptcy court or on appeal, that Nekoba suggests that the proceedings relating to the Writ of Execution are somehow separate from those resulting in entry of the Judgment. Up to that point in this action, Nekoba has addressed the Writ of Execution as a legal consequence of the Judgment, not as a separate proceeding requiring Stern analysis. In the Reply Brief, Nekoba offers an extended discussion of how supplementary proceedings to aid in collection of a judgment fall within the prohibited zone of Stern: "The Rule 69 supplemental proceeding raises the issue of whether during the enforcement phase of an adversary proceeding judgment, does the Stern v. Marshall decision entitle Mr. Nekoba to an Article III judge to enforce the writ of execution." Appellant's Reply Brief at 15.

Of course, as can be seen from Nekoba's own words, this is a new issue raised for the first time only in his Reply Brief. This argument was not made to the bankruptcy court, nor does it appear in his Opening Brief in this appeal. An appellant may not raise arguments on appeal that were not raised and adequately argued in the bankruptcy court. Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 (9th Cir. 2003) ("These arguments are raised for the first time on appeal, and because they were

-13-

never argued before the district court, we deem them waived."); Concrete Equip. Co. v. Virgil Bros. Constr., Inc. (In re Virgil Bros. Constr., Inc.), 193 B.R. 513, 520 (9th Cir. BAP 1996) ("The rule is well established that an issue not raised by a party in the court below will not be considered on appeal, absent exceptional circumstances."). Moreover, by waiting to make his argument in a reply, without mentioning it in his Opening Brief, he impermissibly prejudices HNB's ability to respond to it. Friends of Yosemite Valley v. Kempthorne, 520 F.3d 1024, 1033 (9th Cir. 2008) (deeming waived issues not raised in the opening brief).

In sum, we decline to consider Neboka's Stern argument, in this appeal.

## VI. CONCLUSION

Nekoba could not wait until long after the Judgment was final to collaterally attack the subject matter jurisdiction, or Constitutional power, of the bankruptcy court to enter that Judgment. Since this is the sole basis Neboka offers to reverse the bankruptcy court's order, we AFFIRM.