*140 Justice Souter
delivered the opinion of the Court.
As an element of the 1986 reorganization plan of the Johns-Manville Corporation (Manville), the United States Bankruptcy Court for the Southern District of New York enjoined certain lawsuits against Manville’s insurers, including The Travelers Indemnity Company and its affiliates (Travelers). The question is whether the injunction bars state-law actions against Travelers based on allegations either of its own wrongdoing while acting as Manville’s insurer or of its misuse of information obtained from Manville as its insurer. We hold that the terms of the injunction bar the actions and that the finality of the Bankruptcy Court’s orders following the conclusion of direct review generally stands in the way of challenging the enforceability of the injunction.
I
From the 1920s to the 1970s, Manville was, by most accounts, the largest supplier of raw asbestos and manufacturer of asbestos-containing products in the United States, In re Johns-Manville Corp., 517 F. 3d 52, 55-56 (CA2 2008), and for much of that time Travelers was Manville’s primary liability insurer. In re Johns-Manville Corp., No. 82 B 11656 etc. (Bkrtcy. Ct. SDNY 2004), App. to Pet. for Cert. in No. 08-295, pp. 111a-112a (hereinafter Bkrtcy. Ct. Op.). As studies began to link asbestos exposure to respiratory disease and thousands of lawsuits were filed against Manville, Travelers, as the insurer, worked closely with Manville to learn what its insured knew and to assess the dangers of asbestos exposure; it evaluated Manville’s potential liability and defenses, and paid Manville’s litigation costs. Id., at 114a-117a, 121a-122a. In 1982, the prospect of overwhelming liability led Manville to file for bankruptcy protection in the Southern District of New York.
It thus became incumbent on the Bankruptcy Court to devise “a plan of reorganization for [Manville] which would provide for payment to holders of present or known asbestos *141 health related claims ... and [to] those persons who had not yet manifested an injury but who would manifest symptoms of asbestos-related illnesses at some future time.” In re Johns-Manville Corp., 97 B. R. 174, 176 (Bkrtcy. Ct. SDNY 1989). The ensuing reorganization plan created the Man-ville Personal Injury Settlement Trust (Trust) to pay all asbestos claims against Manville, which would be channeled to the Trust. See Kane v. Johns-Manville Corp., 843 F. 2d 636, 640-641 (CA2 1988); In re Johns-Manville Corp., 340 B. R. 49, 54 (SDNY 2006). The Trust has since paid out more than $3.2 billion to over 600,000 claimants. Bkrtcy. Ct. Op. 136a-137a.
In the period leading up to the reorganization, Manville and its insurers litigated over the scope and limits of liability coverage, and Travelers faced suits by third parties, such as Manville factory workers and vendors of Manville products, seeking compensation under the insurance policies. There was also litigation among the insurers themselves, who brought various indemnity claims, contribution claims, and cross-claims. Id., at 132a-134a. In a settlement described as the “cornerstone” of the Manville reorganization, the insurers agreed to provide most of the initial corpus of the Trust, with a payment of $770 million to the bankruptcy estate, $80 million of it from Travelers. MacArthur Co. v. Johns-Manville Corp., 837 F. 2d 89, 90 (CA2 1988); Bkrtcy. Ct. Op. 134a; In re Johns-Manville Corp., 68 B. R. 618, 621 (Bkrtcy. Ct. SDNY 1986).
There would have been no such payment without the injunction at the heart of the present dispute. The December 18,1986, order of the Bankruptcy Court approving the insurance settlement agreements (Insurance Settlement Order) provides that, upon the insurers’ payment of the settlement funds to the Trust, “all Persons are permanently restrained and enjoined from commencing and/or continuing any suit, arbitration or other proceeding of any type or nature for Policy Claims against any or all members of the Settling Insurer *142 Group.” App. to Pet. for Cert. in No. 08-295, at 446a. The Insurance Settlement Order goes on to provide that the insurers are “released from any and all Policy Claims,” which are to be channeled to the Trust. Ibid. The order defines “Policy Claims” as “any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against . . . any or all members of the Settling Insurer Group based upon, arising out of or relating to any or all of the Policies.” Id., at 439a. The insurers were entitled “to terminate the settlements if the injunctive orders [were] not issued or if they [were] set aside on appeal.” MacArthur, supra, at 90.
The Insurance Settlement Order was incorporated by reference in the Bankruptcy Court’s December 22, 1986, order confirming Manville’s Second Amended and Restated Plan of Reorganization (Confirmation Order).[1] App. to Pet. for Cert, in No. 08-295, at 271a-272a. Both the Confirmation Order and the Insurance Settlement Order (collectively, 1986 Orders) were affirmed by the District Court, see In re Johns-Manville Corp., 78 B. R. 407 (SDNY 1987), and the Court of Appeals for the Second Circuit, see MacArthur, supra; Kane, supra.
Nonetheless, over a decade later plaintiffs started filing asbestos actions against Travelers in various state courts, cases that have been spoken of in this litigation as Direct Actions. They are of two sorts. The Statutory Direct Actions are brought under state consumer-protection statutes, and allege that Travelers conspired with other insurers and with asbestos manufacturers to hide the dangers of asbestos and to raise a fraudulent “state of the art” (or “ 'no duty to warn’ ”) defense to personal injury claims. Bkrtcy. Ct. Op. *143 140a-143a. The Common Law Direct Actions claim that Travelers violated common law duties by failing to warn the public about the dangers of asbestos or by acting to keep its knowledge of those dangers from the public. Id., at 143a-147a. It is undisputed that many of the plaintiffs seek to recover from Travelers, not indirectly for Manville’s wrongdoing, but for Travelers’ own alleged violations of state law. See 517 F. 3d, at 63.[2]
In 2002, Travelers invoked the terms of the 1986 Orders in moving the Bankruptcy Court to enjoin 26 Direct Actions pending in state courts. Id., at 58. The court issued a temporary restraining order, repeatedly extended, and referred the parties to mediation, which led to settlements between Travelers and three sets of plaintiffs in both Statutory and Common Law Direct Actions. Bkrtcy. Ct. Op. 103a-104a. Under the settlement terms Travelers would pay more than $400 million to settlement funds to compensate Direct Action claimants, contingent upon the entry of an order by the Bankruptcy Court clarifying that the Direct Actions were, and remained, prohibited by the 1986 Orders. Id., at 150a-152a. The settlement requires claimants seeking payment from the settlement funds to grant Travelers a release from further liability, separate and apart from Travelers’ protection under the 1986 Orders. Id., at 151a-152a.
After notice of the settlement was given to potential claimants, the Bankruptcy Court (the same judge who had issued the 1986 Orders) held an evidentiary hearing and made extensive factual findings that are not challenged here. The *144 court determined that “Travelers[’] knowledge of the hazards of asbestos was derived from its nearly three decade insurance relationship with Manville and the performance by Travelers of its obligations under the Policies, including through the underwriting, loss control activities, defense obligations and generally through its lengthy and confidential insurance relationship under the policies.” Id., at 128a-129a. In sum, the Bankruptcy Court found that “Travelers learned virtually everything it knew about asbestos from its relationship with Manville.” Id., at 131a.
As for the Direct Actions, the court saw “[t]he gravamen of the Statutory Direct Action Lawsuits” as “center[ing] on Travelers[’] defense of Manville in asbestos-related claims.” Id., at 142a. The court read the “alleged factual predicate” of the Common Law Direct Actions as being “essentially identical to the statutory actions: Travelers . . . influence[d] Manville’s purported failure to disclose knowledge about asbestos hazards; Travelers defended Manville; Travelers advanced the state of the art defense; and Travelers coordinated Manville’s national defense effort.” Id., at 147a (citations omitted). The court understood “the direct action claims against Travelers [to be] inextricably intertwined with Travelers[’] long relationship as Manville’s insurer,” id., at 169a, and found that “[a]fter the Court preliminarily enjoined prosecution of Direct Action Claims against Travelers pending final ruling on the merits, certain plaintiffs’ lawyers violated the letter and the spirit of this Court’s rulings by simply deleting the term ‘Manville’ from their complaints— but leaving the substance unchanged,” id., at 147a.
Hence, the court’s conclusion that “[t]he evidence in this proceeding establishes that the gravamen of Direct Action Claims were acts or omissions by Travelers arising from or relating to Travelers^] insurance relationship with Manville.” Id., at 173a. Finding that the “claims against Travelers based on such actions or omissions necessarily ‘arise out of’ and [are] ‘related to’” the insurance policies, *145 ibid., which compelled Travelers to defend Manville against asbestos-related claims, id., at 173a-176a, the Bankruptcy Court held that the Direct Actions “are — and always have been — permanently barred” by the 1986 Orders, id., at 170a.
The settlement was accordingly approved and an order dated August 17, 2004 (Clarifying Order), was entered, providing that the 1986 Orders barred the pending Direct Actions and “[t]he commencement or prosecution of all actions and proceedings against Travelers that directly or indirectly are based upon, arise out of or relate to TravelersP] insurance relationship with Manville or Travelers!”] knowledge or alleged knowledge concerning the hazards of asbestos,” including claims for contribution or indemnification. Id., at 95a. The Clarifying Order does not, however, block “the commencement and prosecution of claims against Travelers by policyholders other than Manville ... for insurance proceeds or other obligations arising under any policy of insurance provided by Travelers to a policyholder other than Man-ville.” Id., at 96a. The Clarifying Order also separately disclaims that it enjoins bringing
“claims arising from contractual obligations by Travelers to policyholders other than Manville, as long as TravelersP] alleged liability or the proof required to establish Travelers!”] alleged liability is unrelated to any knowledge Travelers gained from its insurance relationship with Manville or acts, errors, omissions or evidence related to Travelers [’] insurance relationship with Man-ville.” Ibid.
Some individual claimants and Chubb Indemnity Insurance Company (Chubb), respondents before this Court, objected to the settlement and subsequently appealed.[3] So far *146 as it matters here, the District Court affirmed, but the Court of Appeals for the Second Circuit reversed. In presenting the case to the Second Circuit the objectors argued that the Direct Actions fall outside the scope of the 1986 Orders and that the Clarifying Order erroneously expands those orders to bar actions beyond the Bankruptcy Court’s subject-matter jurisdiction and statutory authority. Travelers and the settling claimants responded that the Clarifying Order is consistent with the terms of the 1986 Orders, that this reading of the 1986 Orders does not generate any jurisdictional or other statutory concerns, and that the Second Circuit’s prior rejection of a challenge to the Insurance Settlement Order in MacArthur, 837 F. 2d 89, is controlling.
In its opinion explaining the judgment under review here, the Second Circuit recognized that “[i]t is undisputed that the bankruptcy court had continuing jurisdiction to interpret and enforce its own 1986 orders,” and that “there is no doubt that the bankruptcy court had jurisdiction to clarify its prior orders.” 517 F. 3d, at 60-61. It also had “little doubt that, in a literal sense, the instant claims against Travelers ‘arise out of’ its provision of insurance coverage to Manville,” id., at 67, and the court emphasized that “[t]he bankruptcy court’s extensive factual findings regarding Manville’s all-encompassing presence in the asbestos industry and its extensive relationship with Travelers support this notion” that the subjects of the Clarifying Order fall within the scope of the 1986 Orders, ibid. The Circuit nevertheless held that the Bankruptcy Court could not, in enforcing the 1986 Orders, “enjoin claims over which it had no jurisdiction,” id., at 61, and that “[t]he ancillary jurisdiction courts possess to enforce their own orders is itself limited by the jurisdictional limits’ of the order sought to be enforced,” id., at 65, n. 22 (internal quotation marks omitted). See also id., at 65 (“The fact that our case involves a clarification of the bankruptcy court’s prior order does not alter the jurisdictional predicate necessary to enjoin third-party non-debtor claims”).
*147 The Court of Appeals found that “the jurisdictional analysis by the lower courts falls short,” id., at 62, in failing to recognize the significance of the fact that the Direct Actions “do not seek to collect on the basis of Manville’s conduct,” but rather “seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct,” id., at 63. The Court of Appeals held that the Bankruptcy Court mistook its jurisdiction when it enjoined “claims brought against a third-party non-debtor solely on the basis of that third-party’s financial contribution to a debtor’s estate,” because “a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate.” Id., at 66.
In reaching this result, the court explained that its prior decision in MacArthur was not controlling, as there a Man-ville asbestos distributor had challenged the authority of the Bankruptcy Court to bar it from collecting out of Manville’s own insurance coverage. 517 F. 3d, at 62. Here, by contrast, “Travelers candidly admits that both the statutory and common law claims seek damages from Travelers that are unrelated to the policy proceeds.” Id., at 63. The Court of Appeals also considered the 1994 enactment of 11 U. S. C. § 524(g), which provides explicit statutory authority for a bankruptcy court to order the channeling of claims against a debtor’s insurers to the bankruptcy estate, but the court understood § 524(g) to be “limited to situations where a third party has derivative liability for the claims against the debtor” and “was not intended to reach non-derivative claims.” 517 F. 3d, at 68 (ellipsis and internal quotation marks omitted).
We granted certiorari, 555 U. S. 1083 (2009), and now reverse.
II
The Bankruptcy Court correctly understood that the Direct Actions fall within the scope of the 1986 Orders, as suits *148 of this sort always have. The Court of Appeals, however, believed it was free to look beyond the terms of the 1986 Orders and so treated the action as one “concern[ing] the outer reaches of a bankruptcy court’s jurisdiction.” 517 F. 3d, at 55. This, we think, was error. If this were a direct review of the 1986 Orders, the Court of Appeals would indeed have been dutybound to consider whether the Bankruptcy Court had acted beyond its subject-matter jurisdiction. See Arbaugh v.Y & H Corp., 546 U. S. 500, 514 (2006); Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379, 382 (1884). But the 1986 Orders became final on direct review over two decades ago, and Travelers’ response to the Circuit’s jurisdictional ruling is correct: whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us.
A
We begin at our point of agreement with the Second Circuit, that the Direct Actions are “Policy Claims” enjoined as against Travelers by the language of the 1986 Orders, which covered “claims, demands, allegations, duties, liabilities and obligations” against Travelers, known or unknown at the time, “based upon, arising out of or relating to” Travelers’ insurance coverage of Manville. App. to Pet. for Cert. in No. 08-295, at 439a. In a statute, “[t]he phrase fin relation to’ is expansive,” Smith v. United States, 508 U. S. 223, 237 (1993), and so is its reach here, where “Policy Claims” covers not only “claims,” but even “allegations” relating to the insurance coverage. Although it would be possible (albeit quite a stretch) to suggest that a “claim” only relates to Travelers’ insurance coverage if it seeks recovery based upon Travelers’ specific contractual obligation to Manville, “allegations” is not even remotely amenable to such a narrow construction and clearly reaches factual assertions that re *149 late in a more comprehensive way to Travelers’ dealings with Manville..
The Bankruptcy Court’s uncontested factual findings drive the point home. In substance, the Bankruptcy Court found that the Direct Actions seek to recover against Travelers either for supposed wrongdoing in its capacity as Manville’s insurer or for improper use of information that Travelers obtained from Manville as its insurer. These actions so clearly involve “claims” (and, all the more so, “allegations”) “based upon, arising out of or relating to” Travelers’ insurance coverage of Manville, that we have no need here to stake out the ultimate bounds of the injunction. There is, of course, a cutoff at some point, where the connection between the insurer’s action complained of and the insurance coverage would be thin to the point of absurd. See California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A, Inc., 519 U. S. 316, 335 (1997) (Scalia, J., concurring) (“[AJpplying the ‘relate to’ provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else”); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U. S. 645, 655 (1995). But the detailed findings of the Bankruptcy Court place the Direct Actions within the terms of the 1986 Orders without pushing the limits.
Respondents argue that this is just revisionism perpetrated by the Clarifying Order, which they say improperly expanded the scope of the 1986 Orders to enjoin the Direct Actions. Their position appears to be that the 1986 Orders only bar actions against insurers seeking to recover derivatively for Manville’s wrongdoing, but not actions to recover for Travelers’ own misconduct, no matter what its relationship to Travelers’ coverage of Manville. But this simply is not what the 1986 Orders say. The definition of “Policy Claims” contains nothing limiting it to derivative actions, *150 and there is language in the 1986 Orders directly to the contrary: the 1986 Orders not only enjoin bringing expansively defined “Policy Claims” against the settling insurers, but they go on to provide that the injunction has no application to a claim previously brought against a settling insurer “seeking any and all damages (other than or in addition to policy proceeds) for bad faith or other insurer misconduct alleged in connection with the handling or disposition of claims.” App. to Pet. for Cert, in No. 08-295, at 446a. There is no doubt about the implication, that this same sort of claim brought after the 1986 Orders become final will be barred. There would have been no need for this exception if “Policy Claims” were limited to claims against Travelers for Manville’s wrongdoing.
Respondents seek further refuge in evidence that before entry of the 1986 Orders some parties to the Manville bankruptcy (including Travelers) understood the proposed injunction to bar only claims derivative of Manville’s liability. They may well be right about that: we are in no position to engage in factfinding on this point, but there certainly are statements in the record that seem to support respondents’ contention. See App. for Respondent Chubb 1a-3a, 5a, 13a-14a. But be that as it may, where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect. See, e. g., Negrón-Almeda, v. Santiago, 528 F. 3d 15, 23 (CA12008) (“[A] court must carry out and enforce an order that is clear and unambiguous on its face”); United States v. Spallone, 399 F. 3d 415, 421 (CA2 2005) (“[I]f a judgment is clear and unambiguous, a court must adopt, and give effect to, the plain meaning of the judgment” (internal quotation marks omitted)). If it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties’ subjective intent, see 11R. Lord, Williston on Contracts §30:4 (4th ed. 1999), it is all the clearer that a court should enforce a court order, a public *151 governmental act, according to its unambiguous terms.[4] This is all the Bankruptcy Court did.
B
Given the Clarifying Order’s correct reading of the 1986 Orders, the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders. See Local Loan Co. v. Hunt, 292 U. S. 234, 239 (1934). What is more, when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions. See App. to Pet. for Cert. in No. 08-295, at 284a-286a.
The Court of Appeals, however, went on to a different jurisdictional enquiry. It held that the 1986 Orders could not be enforced according to their terms because, as the panel saw it, the Bankruptcy Court had exceeded its jurisdiction when it issued the orders in 1986. We think, though, that it was error for the Court of Appeals to reevaluate the Bankruptcy Court’s exercise of jurisdiction in 1986.
*152 On direct appeal of the 1986 Orders, anyone who objected was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns sua sponte. In fact, one objector argued just that. In MacArthur, a distributor of Manville asbestos claimed to be a coinsured under certain Manville insurance policies and argued that the 1986 Orders exceeded the Bankruptcy Court’s jurisdiction by preventing the distributor from recovering under the policies; the Second Circuit disagreed, concluding that the Bankruptcy Court had not stepped outside its jurisdiction or statutory authority.[5] See 837 F. 2d, at 91-94. But once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the “ 'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.’” Nevada v. United States, 463 U. S. 110, 130 (1983) (quoting Cromwell v. County of Sac, 94 U. S. 351, 352 (1877)).
Those orders are not any the less preclusive because the attack is on the Bankruptcy Court’s conformity with its subject-matter jurisdiction, for ''[e]ven subject-matter jurisdiction . . . may not be attacked collaterally.” Kontrick v. Ryan, 540 U. S. 443, 455, n. 9 (2004). See also Chicot County *153 Drainage Dist. v. Baxter State Bank, 308 U. S. 371, 376 (1940) (“[Federal courts] are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally”). So long as respondents or those in privity with them were parties to the Manville bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court’s subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders. See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U. S. 694, 702, n. 9 (1982) (“A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment”); Chicot County, supra, at 375 (“[T]hese bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it”).[6]
*154 The willingness of the Court of Appeals to entertain this sort of collateral attack cannot be squared with res judicata and the practical necessity served by that rule. “It is just as important that there should be a place to end as that there should be a place to begin litigation,” Stoll v. Gottlieb, 305 U. S. 165, 172 (1938), and the need for finality forbids a court called upon to enforce a final order to “tunnel back . . . for the purpose of reassessing prior jurisdiction de novo,” In re Optical Technologies, Inc., 425 F. 3d 1294, 1308 (CA11 2005). If the law were otherwise, and “courts could evaluate the jurisdiction that they may or may not have had to issue, a final judgment, the rules of res judicata... would be entirely short-circuited.” Id., at 1307; see Willy v. Coastal Corp., 503 U. S. 131, 137 (1992) (“[T]he practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject-matter jurisdiction”). Almost a quarter century after the 1986 Orders were entered, the time to prune them is over.[7]
*155 III
Our holding is narrow. We do not resolve whether a bankruptcy court, in 1986 or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor’s wrongdoing. As the Court of Appeals noted, in 1994 Congress explicitly authorized bankruptcy courts, in some circumstances, to enjoin actions against a nondebtor “alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability ... arises by reason of... the third party’s provision of insurance to the debtor or a related party,” and to channel those claims to a trust for payments to asbestos claimants. 11 U. S. C. § 524(g)(4)(A)(ii). On direct review today, a channeling injunction of the sort issued by the Bankruptcy Court in 1986 would have to be measured against the requirements of §524 (to begin with, at least). But owing to the posture of this litigation, we do not address the scope of an injunction authorized by that section.[8]
Nor do we decide whether any particular respondent is bound by the 1986 Orders. We have assumed that respondents are bound, but the Court of Appeals did not consider this question. Chubb, in fact, relying on Amchem Products, Inc. v. Windsor, 521 U. S. 591 (1997), and Ortiz v. Fibreboard Corp., 527 U. S. 815 (1999), has maintained that it was not given constitutionally sufficient notice of the 1986 Orders, so that due process absolves it from following them, whatever their scope. See 340 B. R., at 68. The District Court rejected this argument, id., at 68-69, but the Court of Appeals did not reach it, 517 F. 3d, at 60, n. 17. On remand, the Court of Appeals can take up this objection and any others that respondents have preserved.
*156 IV
We reverse the judgment of the Court of Appeals and remand the cases for further proceedings consistent with this opinion.

It is so ordered.

The Confirmation Order itself contains an additional injunction barring certain claims against the settling insurance companies. App. to Pet. for Cert, in No. 08-295, pp. 286a-288a. That injunction does not bear on our decision, and we do not consider it.

 A true “direct action” suit is “[a] lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured.” Black’s Law Dictionary 491 (8th ed. 2004). Because many of the suits at issue seek to hold Travelers liable for independent wrongdoing rather than for a legal wrong by Manville, they are not direct actions in the terms of strict usage. Nonetheless, because the suits are referred to as “direct actions” in the decisions of the Bankruptcy Court, the District Court, and the Court of Appeals, we call them that as well, in the interest of simplicity. See 517 F. 3d, at 55, n. 4.

 Chubb is a codefendant with Travelers in certain Common Law Direct Actions, and the Clarifying Order prevents it from bringing contribution and indemnity claims against Travelers under certain circumstances. See Brief for Respondent Chubb 16.

 Even if we found the 1986 Orders to be ambiguous as applied to the Direct Actions, and even if we concluded that it would be proper to look to the parties’ communications to resolve that ambiguity, it is far from clear that respondents would be entitled to upset the Bankruptcy Court’s interpretation of the 1986 Orders. Numerous Courts of Appeals have held that a bankruptcy court’s interpretation of its own confirmation order is entitled to substantial deference. See In re Shenango Group Inc., 501 F. 3d 338, 346 (CA3 2007); In re Dow Corning Corp., 456 F. 3d 668, 675 (CA6 2006); In re Optical Technologies, Inc., 425 F. 3d 1294, 1300 (CA11 2005); In re Dial Business Forms, Inc., 341 F. 3d 738, 744 (CA8 2003); In re National Gypsum Co., 219 F. 3d 478, 484 (CA5 2000); In re Casse, 198 F. 3d 327, 333 (CA2 1999); In re Tomlin, 105 F. 3d 933, 941 (CA4 1997); Monarch Life Ins. Co. v. Ropes & Gray, 65 F. 3d 973, 983 (CA1 1995); In re Weber, 25 F. 3d 413, 416 (CA7 1994). Because the 1986 Orders clearly cover the Direct Actions, we need not determine the proper standard of review.

 We agree with the Court of Appeals that MacArthur only resolved the narrow question whether the Bankruptcy Court could enjoin derivative claims against the insurers and did not address whether the 1986 Orders, in their entirety, were proper. We note MacArthur merely to illustrate the obvious: the 1986 Orders were subject to challenge, on jurisdictional grounds or otherwise, on direct review. The dissent suggests that MacArthur limited the scope of the 1986 Orders to derivative claims, see post, at 156, 162-163 (opinion of Stevens, !), but it did not. The question whether the Bankruptcy Court had enjoined or could properly enjoin non-derivative claims was not at issue in MacArthur, and the court did not answer it.

 The rule is not absolute, and we have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack. See, e. g., United States v. United States Fidelity & Guaranty Co., 309 U. S. 506, 514 (1940) (a collateral attack on subject-matter jurisdiction is permissible “where the issue is the waiver of [sovereign] immunity”); Kalb v. Feuerstein, 308 U. S. 433, 439-440, 444 (1940) (where debtor’s petition for relief was pending in bankruptcy court and federal statute affirmatively divested other courts of jurisdiction to continue foreclosure proceedings, state-court foreclosure judgment was subject to collateral attack). More broadly, the Restatement (Second) of Judgments § 12, p. 115 (1980), describes three exceptional circumstances in which a collateral attack on subject-matter jurisdiction is permitted:
“(1) The subject matter of the action was so plainly beyond the court’s jurisdiction that its entertaining the action was a manifest abuse of authority; or
“(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
*154 “(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court’s subject matter jurisdiction.”
This is no occasion to address whether we adopt all of these exceptions. Respondents do not claim any of them, and we do not see how any would apply here. This is not a situation, for example, in which a bankruptcy court decided to conduct a criminal trial, or to resolve a custody dispute, matters “so plainly beyond the court’s jurisdiction” that a different result might be called for.

 Respondents point out that it is Travelers, not they, who moved the Bankruptcy Court to enforce the 1986 Orders. But who began the present proceedings has no bearing on the application of res judicata; to the extent respondents argue that the 1986 Orders should not be enforced according to their terms because of a jurisdictional flaw in 1986, this argument is an impermissible collateral attack. And to the extent respondents disclaim any initial intent to mount such an attack, this too is irrelevant, since the decision of the Court of Appeals is what we review and find at odds with finality.

 Section 524(h) provides that under some circumstances § 524(g) operates retroactively to validate an injunction. We need not decide whether those circumstances are present here.