| NONPRECEDENTIAL DISPOSITION |
| :---: |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 3, 2014
Decided July 15, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2508

| | |
| --- | --- |
| TIMOTHY D. BARTLETT and KIM K. BARTLETT, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *Debtors-Appellants*, | |
| *v.* | No. 13-cv-00432 |
| FIFTH THIRD BANK, | William T. Lawrence, |
| *Creditor-Appellee*. | *Judge*. |

**O R D E R**

Fifth Third Bank held a mortgage on property owned by the Bartletts' wholly-owned corporation, High-Q Farms, Inc. Although the Bartletts owned no interest in the property, they claimed they did when they personally filed for bankruptcy. The bankruptcy court allowed Fifth Third to collaterally attack the Bartletts' confirmed bankruptcy plan based on a lack of subject matter jurisdiction, even though Fifth Third did not appear in the bankruptcy proceeding to object or appeal the confirmation. The district court affirmed. We hold that Fifth Third was not barred from collaterally attacking the bankruptcy court's lack of jurisdiction because Fifth Third did not receive adequate notice of the proceeding. Therefore, we also affirm.

I.      **Background**

The Bartletts owned High-Q Farms, Inc., an Indiana corporation which owned a small farm where the Bartletts lived and Tim Bartlett practiced equine veterinary medicine ("the property"). In 2005, High-Q Farms borrowed $142,000 from Fifth Third Bank and gave the bank a promissory note and a mortgage on the property. The Bartletts personally guaranteed the loan. In 2009, after defaulting on the loan, High-Q Farms filed for Chapter 7 bankruptcy for the purpose of dissolving the corporation. The bankruptcy was dismissed after a few months. After the dismissal of High-Q Farms' bankruptcy, the Bartletts assumed High-Q Farms' obligations under the loan and endeavored to pay the property taxes. High-Q Farms never transferred title to the Bartletts; ownership of the property remained with High-Q Farms.

In November 2010, the Bartletts filed for Chapter 13 bankruptcy. For reasons unknown, they claimed that they owned the property in joint tenancy and claimed that Fifth Third's interest was limited to "[p]ortions of real estate including bar[n] and outbuildings used for vet practice." The plan proposed to cram down the loan to the market value of the property, estimated to be $40,000. Fifth Third received notice of the bankruptcy, but did not participate in the proceedings. The bankruptcy court confirmed the plan in April 2011. Fifth Third did not appeal from this final judgment of the bankruptcy court. The Indiana Secretary of State administratively dissolved High-Q Farms sometime later in March 2013.

In July 2013, over two years after confirmation of the Bartletts' bankruptcy plan, Fifth Third moved for relief from the automatic stay for cause under 11 U.S.C. § 362(d). The claim was that the property was not property of the Bartletts' bankruptcy estate on the petition date because at that time High-Q Farms, not the Bartletts, owned the property. Since the property was not the property of the Bartletts' bankruptcy estate, the bankruptcy court lacked subject matter jurisdiction over it. The bankruptcy court granted the motion, lifted the automatic stay from Fifth Third, and ordered the trustee to abandon the property.

The Bartletts appealed to the district court, claiming that they had acquired an equitable interest in the property by assuming High-Q Farms' obligations. Alternatively, they argued that Fifth Third had waived its subject matter jurisdiction argument by failing to object to the plan's confirmation and could not now collaterally attack it. The district court found that the Bartletts did not have an interest in the property and that the bankruptcy court lacked jurisdiction over the property. Relying on the principle that questions of subject matter jurisdiction cannot be waived, the district court affirmed. The

district court noted that had Fifth Third's motion been premised on anything but subject matter jurisdiction, it would have agreed with the Bartletts that Fifth Third's motion should have been denied. The Bartletts appeal.

## II.    Analysis

We review legal issues *de novo* and findings of fact for clear error. *In re Salem*, 465 F.3d 767, 773 (7th Cir. 2006). We review the granting of relief from the automatic stay for an abuse of discretion. *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003).

On appeal, the Bartletts raise the same arguments brought before the district court. First, the bankruptcy court had subject matter jurisdiction because they had an equitable interest in the property. Second, even if they did not have an interest in the property, Fifth Third is barred by *res judicata* from collaterally attacking the confirmation order. Fifth Third had a full and fair opportunity to litigate the lack of subject matter jurisdiction but failed to do so before the time for appealing the confirmation plan had expired. Therefore, the confirmation order is *res judicata* to all issues that could have been raised concerning it. As the district court held, neither argument prevails.

The Bartletts did not have an equitable interest in the property. The property was owned by High-Q Farms. High-Q Farms neither transferred, nor could it transfer, ownership of the property to the Bartletts. Indiana law prohibited High-Q Farms from transferring its assets to the Bartletts until it satisfied its liabilities to Fifth Third. I.C. 23-1-45-5(a)(3) & (b)(1). Whatever payments made by the Bartletts on the loan did not gain them an equitable interest because they were obligated to make those payments as guarantors. The Bartletts rely unsuccessfully on *In re Linderman*, 20 B.R. 826 (Bankr. W.D. Wash. 1982), to support their claim. In *Linderman*, the corporation gained an equitable interest in *part* of the shareholders' property by paying part of the mortgage. *Id*. at 829. But as the district court observed, the Bartletts are shareholders who are seeking an equitable interest in the *whole* of the corporation's property based on paying an unspecified part of the mortgage. Indiana law does not restrict the transfer of a property interest from an individual to a corporation as found in *Linderman*, but, as we said above, it restricts the type of transfer sought by the Bartletts. Furthermore, the Bartletts presented no evidence to the district court of the amount of payments made toward the loan or property taxes.

Fifth Third was not barred by *res judicata* from challenging the bankruptcy court's lack of subject matter jurisdiction. Fifth Third's motion for relief from the automatic stay was, in effect, a collateral attack on the final judgment of the bankruptcy court that

confirmed the Bartletts' plan. Subject matter jurisdiction may be raised at any point up to last direct appeal, but once the judgment is final it may not be attacked collaterally by a party who had a full and fair opportunity to litigate the issue:

> On direct appeal ..., anyone who objected was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns *sua sponte*. In fact, one objector argued just that … . But once the [ ]Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the "'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'"

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (citations omitted). This is true for a confirmed bankruptcy plan: "The reason for this is simple and mirrors the general justification for res judicata principles—after the affected parties have an opportunity to present their arguments and claims, it is cumbersome and inefficient to allow those same parties to revisit or recharacterize the identical problems in a subsequent proceeding." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000).

Normally, a party must make an appearance to have a full and fair opportunity to litigate. S*ee Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851, 853 (7th Cir. 2011) (collateral attack for lack of personal jurisdiction allowed "[b]ecause the defendants did not appear in the district court before entry of judgment, and because they are entitled to one full opportunity to litigate the jurisdictional issue"). In bankruptcy court, however, "a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d at 321. Adequate notice of a bankruptcy proceeding, then, supplies the opportunity to litigate sufficient to preclude collateral attack:

> Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify … relief.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010).

This rule, however, does not apply to Fifth Third because it did not receive adequate notice of the Bartletts' bankruptcy proceeding. Fifth Third received notice of the Bartletts' bankruptcy proceeding concerning the Bartletts' supposed property. But Fifth Third did not possess collateral in the Bartletts' name; it had a mortgage on a property owned by High-Q Farms, a corporation that was not a party to the bankruptcy proceeding. Fifth Third did not receive adequate notice and is therefore not barred from collaterally attacking the judgment of the bankruptcy court for lack of subject matter jurisdiction. Although Fifth Third is "a sophisticated and organized creditor" that "must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they may want to challenge," the erroneous notice provided in this case did not rise to the level of the "informal actual notice" that would bind a creditor such as Fifth Third. *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990).

The Bartletts argue that Fifth Third's motion for relief from the automatic stay should be construed as a motion under Rule 60(b)(4), which is reviewed *de novo*. *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000). We disagree. Fifth Third does not argue that the final order of the bankruptcy court was void. Instead, Fifth Third seeks to have the automatic stay lifted from itself. The remainder of the judgment of the bankruptcy court would not be affected. Nevertheless, if we were to construe the motion under Rule 60(b)(4) we still would hold that Fifth Third is not barred from collaterally attacking the confirmation order because it did not receive adequate notice for *res judicata* to apply.

Consequently, the judgement of the district court is AFFIRMED.