# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01196-COA

PEGGY PARRA, REPRESENTATIVE OF THE          APPELLANT
ESTATE OF SALVADOR PARRA

v.

RAPID-AMERICAN CORPORATION, RILEY         APPELLEES
POWER, INC. F/K/A RILEY STOKER
CORPORATION, DB RILEY, INC., ET AL.

| | |
|---|---|
| DATE OF JUDGMENT: | 06/04/2021 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JOHN S. GRANT IV DAVID WAYNE SHELTON |
| ATTORNEYS FOR APPELLEES: | JENNIFER MARIE STUDEBAKER THOMAS JOEL FYKE CHARLES ELLIOTT "CHAN" McLEOD VERNON MOSES McFARLAND ROSE MARIE WADE WILLIAM LEE WATT RICHARD M. CRUMP DEAN STERLING KIDD SARAH ELIZABETH JONES |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/12/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND LASSITTER ST. PÉ, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Over fifteen years ago, a plaintiff filed suit against multiple companies for asbestos exposure. After an initial burst of activity, the case fell dormant. After several years of inactivity, the trial court dismissed the entire case for lack of prosecution. Finding that this

dismissal was within the trial court's discretion, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2009, Salvador Parra filed suit in Mississippi against 19 companies.[1] He asserted venue in Jones County based on one of the defendants being present there. Salvador claimed he was harmed by exposure to asbestos. Salvador alleged the companies "mined, designed, evaluated, manufactured, packaged, furnished, supplied and/or sold industrial products, boilers/steam generators, adhesives, friction materials, construction materials, insulation, fiber or other products" that "each contained fibrous, incombustible, chemical-resistant, mineral substances commonly called asbestos[.]"

¶3.     A year later, Salvador amended his complaint to clarify he was a citizen of Louisiana, but he had been "employed in Mississippi in 1968 and 1969 and was exposed to asbestos at jobsites in Mississippi at that time." He claimed he worked in Mississippi locales such as Hattiesburg, Clarksdale, Sandersville, Sardis, Tylertown, and Columbus, among others.

¶4.     Salvador passed away in 2011. After he died, his wife Peggy was substituted as a

---

[1] The Appellees here include: Rapid-American Corp.; Riley Power, Inc. f/k/a Riley Stoker Corporation, DB Riley, Inc.; Marsh USA, Inc., Individually and As Successor in Interest to Marsh and McLennan, Inc.; Marsh USA, Inc., A Mississippi Corporation; Marsh USA, Inc., A Louisiana Corporation; Marsh USA, Inc., A Texas Corporation; Marsh & McLennan of Delaware, Inc.; J&H Marsh & McLennan, Inc., J&H M&M ELC Inc., and Marsh USA Risk Services, Inc.; Komp Equipment Company, Inc.; Columbia Gulf Transmission Co.; Paramount Global f/k/a Viacom, Inc. f/k/a CBS Corporation, A Delaware Corporation f/k/a Viacom Inc., Successor by Merger to CBS Corporation, A Pennsylvania Corporation f/k/a Westinghouse Electric Corporation; General Electric Company; Fluor Enterprises, Inc.; Shell Oil Company; Bechtel Corporation; Laurel Machine & Foundry Co.; Transcontinental Gas Pipe Line Co.; Coastal Rubber & Gasket Co.; Mississippi Rubber & Specialty Co.; and The Williams Companies, Inc. Marsh and its related entities have been voluntarily dismissed from this appeal due to settlement. *See infra* note 2.

plaintiff on behalf of his estate. She later filed a motion seeking to amend the complaint to add new claims for wrongful death, but the motion was never pursued and never ruled upon.

¶5.     Since its filing, the underlying case has sat on the docket without any forward progress. It appears the plaintiff propounded discovery in 2009, and some discovery was exchanged in 2011. The case effectively went cold at the end of 2011.

¶6.     There was zero activity from November 2011 until August 2012, when various withdrawals of counsel and changes of address were filed. Subsequently, between 2014 and 2019, there are only 9 docket entries, and none of them moved the case forward in any meaningful fashion.

*History of Asbestos Litigation*

¶7.     One of the companies Parra sued was Marsh USA Inc. Unlike some of the other defendants, Marsh did not actually make or use asbestos. Rather, Marsh served as the "primary insurance broker" for an asbestos company named the Johns-Manville Corporation (Manville) "from 1944 until 1982." *In re Johns-Manville Corp.*, 551 B.R. 104, 107-08 (S.D.N.Y. 2016).

¶8.     The U.S. Supreme Court has previously explained the complicated history of asbestos litigation. "From the 1920s to the 1970s, Manville was, by most accounts, the largest supplier of raw asbestos and manufacturer of asbestos-containing products in the United States[.]" *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 140 (2009). "As studies began to link asbestos exposure to respiratory disease and thousands of lawsuits were filed against Manville, [its primary] insurer . . . worked closely with Manville to learn what its insured knew and to

3

assess the dangers of asbestos exposure," and even "paid Manville's litigation costs." *Id*. at 140. "In 1982, the prospect of overwhelming liability led Manville to file for bankruptcy protection in the Southern District of New York." *Id*. The Manville Trust was created "to pay all asbestos claims against Manville," and the company's various "insurers agreed to provide most of the initial corpus of the Trust, with a payment of $770 million to the bankruptcy estate[.]" *Id*. at 140-41.

¶9.     Marsh contributed $29.75 million to the Manville Trust based on its insurance-broker role. *In re Johns-Manville Corp.*, 534 B.R. 553, 566 (Bankr. S.D.N.Y. 2015), *aff'd in part and rev'd in part*, 551 B.R. 104 (S.D.N.Y. 2016). As a result of this payment, in 1986, "Marsh received a release of, and injunction against," certain claims relating to its provision of services to Manville, which are now commonly referred to as the "1986 Orders." *Id*. at 108-09.

¶10.    The Supreme Court has explained the effect of the 1986 Orders. "As an element of the 1986 reorganization plan of the Johns-Manville Corporation . . . the United States Bankruptcy Court for the Southern District of New York enjoined certain lawsuits against Manville's insurers[.]" *Bailey*, 557 U.S. at 140. Generally speaking, if a party subsequently filed an asbestos-related lawsuit in state court against Manville or one of its insurers—including Marsh—those companies could seek to enjoin the lawsuits.

¶11.    Enforcement of the 1986 Orders through enjoining lawsuits against insurers like Marsh became routine because "where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect." *Id*. at 150. The Supreme Court has also

4

made clear that "as the Second Circuit [has] recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Id*. at 151.

*Background of this Case in Federal Court*

¶12.    Due to the continuing impact of the 1986 Orders as a mechanism to enjoin direct lawsuits against Marsh, Parra's lawsuit has already been the subject of multiple decisions by New York federal courts. In 2016, an order from the bankruptcy court in the Southern District of New York stated, "Parra filed an action in Mississippi state court asserting state-law claims against a number of defendants, including Marsh." *Id*. at 111. "Marsh filed a motion in the [Southern District of New York] bankruptcy court to enforce the 1986 Orders" of injunction. *Id*. at 112. Crucially, Marsh did not just want the case enjoined—it wanted Parra's direct claims against Marsh in state court to be completely barred pursuant to the 1986 Orders. *Id*.

¶13.    In response, Parra essentially argued she was not bound by the earlier orders since she had different claims against Marsh, and she was suing the company for its own actions, not what it had done on behalf of Manville.  Parra sued Marsh under a variety of theories, but pointedly alleging that Marsh was liable for "negligent undertakings, conspiracy, aiding, and abetting courses of conduct" of Manville and that the broker had "willfully suppressed the truth as to the risks and dangers associated with the use of . . . asbestos-containing products" and the like. *Id*. at 111.

¶14.    Nonetheless, the bankruptcy court agreed with Marsh and, among other things, found that "Parra's claims [were] barred by the plain language of the 1986 Orders"; however, the

5

court would allow the complaint to be amended "to assert claims not barred." *Id*. at 112-13.

¶15.    Parra sought review from the district court, which agreed in part but ultimately reversed some conclusions and remanded to the bankruptcy court. *Id*. at 117. The district court found "that the bankruptcy court exceeded its subject matter jurisdiction in barring Parra's claims against Marsh," in part, because there was no factual development as to whether Parra had received sufficient due process in the wake of the 1986 Orders. *Id*. at 117, 123-24.

¶16.    On remand, the bankruptcy court determined Parra had received due process stemming from Manville's bankruptcy and again "enjoin[ed] Parra's Mississippi claim and stat[ed] that Parra's only source of recovery is the Manville Trust." *In re Johns-Manville Corp*., 319 F. Supp. 3d 633, 638 (S.D.N.Y. 2018) (subsequently reversed, as will be explored, *see infra* ¶17). Parra again asked the district court to review, and again the district court reversed the bankruptcy court's ruling. *Id*. at 643-44. The district court found that "[b]ecause Parra did not receive due process, he is not estopped from challenging the bankruptcy court's jurisdiction to channel these claims to the Manville Trust, and that challenge succeeds." *Id*. at 643. Accordingly, the district court ruled that "Parra is free to proceed with the Mississippi action." *Id*. at 643-44.

¶17.    Undeterred, Marsh appealed to the Second Circuit Court of Appeals. *In re Johns-Manville Corp.*, 802 F. App'x 20, 22 (2d Cir. 2020). In a summary order, the Second Circuit reversed the district court's order and reinstated the findings of the bankruptcy court that Parra had received sufficient due process in the Manville bankruptcy. *Id*. at 23. The

6

federal appeals court concluded broadly that "[t]he 1986 Orders channel **all** Johns-Manville-related claims against settling insurers and insurance brokers (including Marsh) . . . into the Manville Trust[.]" *Id*. (emphasis added). In other words, if a party wanted to directly sue Marsh, it could only do so in the bankruptcy court, not by direct action in a state court. Importantly, the Second Circuit held the bankruptcy court had jurisdiction over "whether those claims arise from [Marsh's] contractual obligation to cover Johns-Manville's liability . . . or from their own conduct[.]" *Id*. The Second Circuit found this was not a close question because "[t]hose orders have long since become res judicata as to then-present parties and those in privity with them." *Id*.

*Defendants Assert the State Court Case Should be Dismissed for Lack of Prosecution*

¶18.    Subsequent to these federal proceedings, in January 2021, two of the defendants in Parra's state court suit, Shell Oil Company and Bechtel Corporation, filed separate motions to dismiss for lack of prosecution. These defendants claimed the plaintiff's failure to take action for over nine years warranted a dismissal under Mississippi Rule of Civil Procedure 41(b). Many other defendants joined these motions. However, Marsh did not join either motion to dismiss.

¶19.    Parra responded in opposition in February 2021, arguing that "Parra's claims have been the subject of parallel litigation in the federal courts of New York and that Parra's claims have been enjoined by the New York courts for many years." However, the trial court rejected the idea that Parra should not be penalized due to the Manville bankruptcy and Marsh's involvement with it. "The Plaintiff certainly may have been barred from taking any

7

action in regards to Marsh in the cause herein," the trial court reasoned—"however, Marsh is not the only defendant."

¶20. The Jones County Circuit Court determined that "prior to responding [to] the Motions to Dismiss herein on February 12, 2021, the Plaintiff had not taken any substantive action in this cause for over nine (9) years, since September 6, 2011." The court "disagree[d]" with Parra's argument "that her involvement with Defendant Marsh in the bankruptcy proceeding in the State of New York prevented her from taking any action in this cause" because "Marsh is not the only defendant." Further, the court found "Plaintiff was free and in fact under a duty to pursue her claims," but "[f]or over nine (9) years, the Plaintiff did nothing." The order then stated,

> Given that the last alleged asbestos exposure [for Parra's husband] occurred around forty-seven (47) years ago, coupled with the Plaintiff's failure to timely supplement her discovery responses to identify any potential witnesses, the Court finds that the Defendants have indeed been prejudiced by the lengthy delay in this case.

¶21. The circuit court found that given "the clear record of dilatory conduct by the Plaintiff, and in light of the prejudice it caused to the defendants, the Court finds that the only appropriate sanction is to grant" the Defendants' motions to dismiss "*and* dismiss *this cause* with prejudice." (Emphasis added). The judgment's conclusion reiterated this decision that the trial court "ORDERED AND ADJUDGED" that "this cause is dismissed with prejudice." The trial court did not confine its ruling to only those defendants who had filed a motion to dismiss.

¶22. Shortly after, Parra requested the trial court to reconsider its decision, specifically

"ask[ing] th[e] [c]ourt to reconsider the complete dismissal of the lawsuit" since "Marsh did not join in the motions to dismiss." She argued her "claims have been the subject of parallel litigation in the federal courts of New York" and "have been enjoined by the New York courts for many years." According to Parra, "Defendants' motions fail to demonstrate any real prejudice," so "[n]o sanctions are warranted here" and "dismissal of this case under these circumstances would be unjust."

¶23. Counsel for Parra then scheduled and cancelled a hearing on the motion—eight times. The Jones County court denied the request to reconsider, finding "the egregiously protracted delay of the Plaintiff in timely pursuing her claims against the Defendants has no doubt resulted in prejudice to the ability of the Defendants to efficiently defend after a twelve-year delay in the litigation." The court's order additionally noted, "[t]he Plaintiff's lengthy delay in pursuing her Motion for Reconsideration for a period of over twenty-six months since the filing thereof unfortunately is comparable" to her "pursuit of this lawsuit" in general. Parra appealed.

**DISCUSSION**

¶24. While Parra raises a variety of arguments to protest the trial court's dismissal of her case, one core issue is dispositive—whether the trial court acted outside its discretion in granting the dismissal for lack of prosecution. Because Parra's case sat on the Jones County Circuit Court's docket without prosecution for 9 years, we find the dismissal of the entire action was within the trial court's discretion.[2]

_____

[2] In her appellate briefs, Parra concentrates most of her efforts arguing that Marsh should not have been dismissed. But months after briefing, on July 24, 2025, Parra and

9

¶25.   In Parra's appellate brief, she argues the trial court should not have dismissed "all defendants in the case for lack of prosecution." She argues two defendants "did not file and did not join in any motions to dismiss," so they should not have been dismissed from the suit. She argues it was impractical "to continuously take direct action against each and every one of them to survive a motion to dismiss for failure to prosecute."

¶26.   We "will not disturb a circuit court's ruling on a dismissal for want of prosecution unless it finds an abuse of discretion." *Scott v. UnitedHealthcare of Miss. Inc.*, 374 So. 3d 1270, 1275-76 (¶18) (Miss. Ct. App. 2023). "A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Id.* (quoting *Leasy v. SW Gaming LLC*, 335 So. 3d 555, 558 (¶7) (Miss. 2022)).

¶27.   Pursuant to Mississippi Rule of Civil Procedure 41(b), "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." Rule 41 allows courts "to dismiss an action involuntarily for dismissal for want of prosecution as a penalty for dilatoriness." *Scott*, 374 So. 3d at 1276 (¶20) (quoting *Glass v. City of Gulfport*, 271 So. 3d 602, 604 (¶8) (Miss. Ct. App. 2018)).

¶28.   To find that a dismissal for a lack of prosecution is proper, "[t]he standard is whether there is a clear record of delay *or* contumacious conduct by the plaintiff." *Id.* at 1280 (¶41) (emphasis added); *see* MRCP 41(b). "Delay *alone* may be sufficient to warrant a dismissal."

---

Marsh and other appellees filed a joint motion to voluntarily dismiss Marsh and other companies from this action. That motion was granted on August 7, 2025, and these parties have been dismissed. Therefore, we do not find it necessary to address her contentions as to Marsh and the other dismissed parties any further.

*Id*. at 1280 (¶41) (quoting *Leasy*, 335 So. 3d at 559 (¶10)). In short, "[f]actors other than delay are not required." *Id*.

¶29. This Court recently affirmed a circuit court's dismissal for failure to prosecute in *Smith v. West*, 385 So. 3d 1276, 1279-80 (¶¶12, 14) (Miss. Ct. App. 2024). We found "several periods of inaction throughout [that] case, which demonstrate[d] a clear record of delay." *Id*. Specifically, "The first delay was a nine-month period of inaction from August 2015 to May 2016"; "[t]he second delay was a fifteen-month period of inaction from February 2018 to May 2019"; the "third period of inaction [was] for almost two years"; and "[t]he fourth delay was a fifteen-month period of inaction from August 2021 to November 2022[.]" *Id*. at 1279 (¶12).

¶30. Here, we agree with the trial court there was a clear record of delay by Parra. This case was originally filed in 2009, and Peggy was substituted as plaintiff in November 2011. There was a period of delay from the point of this substitution until Parra filed her response to the defendant's motion to dismiss in February 2021. Therefore, there was over a 9-year period of delay in Parra's case.

¶31. The trial court's order dismissing Parra's case revealed that "since September 6, 2011, the Plaintiff had not made a substantive filing with the Court" until responding to the motions to dismiss.

¶32. Unusually, Parra does not argue that the trial court abused its discretion because she took action of record that prevents dismissal. Instead, despite having no action of record, she asks this Court to construe the relatively minimal times that she was enjoined from

11

proceeding against Marsh as "good cause" for the years of inaction. But that does not comport with our jurisprudence. Parra did not file a motion to stay with the trial court or take any other action—she simply allowed the docket to grow cold.

¶33. Furthermore, regardless of the times Parra was precluded by the federal bankruptcy court from litigating against Marsh, she was *never* prohibited from litigating against any of the other named defendants in this case. As amply set out above, our precedent and Rules of Civil Procedure require cases to be pursued with diligence toward finality.

¶34. A key case from our Supreme Court reasoned, "One who files an action at law assumes an obligation to use all due diligence to see that the action proceeds on its natural course until the matter is resolved, or at least to put no obstacles in the way." *Watson v. Lillard*, 493 So. 2d 1277, 1277 (Miss. 1986). And ample precedent "underscores the need for taking this obligation seriously." *Id*.

¶35. Accordingly, as a failsafe, we "also must consider whether lesser sanctions would suffice." *Holder v. Orange Grove Med. Specialties P.A.*, 54 So. 3d 192, 197 (¶17) (Miss. 2010). In this duty, we "are mindful of the fact that dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." *Id*.

¶36. In *Watson*, while acknowledging that dismissal for failure to prosecute was an "extraordinary remedy," the Court affirmed the sanction where a plaintiff had substantially failed to prosecute by failing to set trial by a court-ordered deadline and churning through multiple sets of lawyers, within a year and a half of filing. *Watson*, 493 So. 2d at 1278-79.

12

¶37. Subsequently in *Scott*, this Court noted that the plaintiff's motion, which was filed in response to a Rule 41 notice from the clerk, "was really no more than a request to remain active on the court's docket that simply does not suffice as an 'action of record.'" *Scott*, 374 So. 3d at 1277 (¶28). We concluded that "the circuit court did not abuse its discretion by refusing to impose lesser sanctions than dismissal after an additional two-and-a-half years of inactivity." *Id*. at 1283 (¶56).

¶38. In Parra's case, there are more docket entries for cancellation of hearings and change of address than there are for depositions. The total time period of Parra's inactivity far exceeds that in *Scott*, and the history of procedural stonewalling surpasses the modest facts of *Watson*. "To condone such effortless conduct . . . makes a mockery of the Mississippi Rules of Civil Procedure." *Scott*, 374 So. 3d at 1277 (quoting *Ill. Cent. R.R. Co.*, 994 So. 2d at 728 (¶13)).

¶39. In the 16 years this case has been filed in Mississippi, almost nothing has happened. Even now, the original order by the trial court dismissing for lack of prosecution was *four years ago*. We find the extreme passage of time warranted the imposition of this penalty.

¶40. Furthermore, as established in *Watson* and reiterated in *Scott*, the trial court has the authority to control its own docket. This power extends to sua sponte dismissing a lawsuit for lack of prosecution in appropriate circumstances. Regardless of whether each individual defendant asked the court to do so, the trial court had the inherent authority to dismiss this lawsuit given these extreme facts.

¶41. Likewise, we find little cover for Parra in her argument that the federal court

13

proceedings dampened her ability to pursue her case in Mississippi. As amply set out in the procedural history above, the bankruptcy was not a routine one that slowed down proceedings; instead, the bankruptcy court *repeatedly ruled that Parra could not maintain this action*. Nonetheless, Parra continued—even after a comprehensive ruling by the Second Circuit that she could not continue. This insistence has resulted in a civil contempt finding by the bankruptcy court against Parra and her counsel for continuing to maintain this appeal.[3] Furthermore, the case remained inactive even long after the last ruling by the Second Circuit Court of Appeals.

¶42. As the Supreme Court declared almost forty years ago, "[o]ne who files an action at law assumes an obligation to use all due diligence to see that the action proceeds on its natural course until the matter is resolved[.]" *Watson*, 493 So. 2d at 1277. This case was not

---

[3] After Parra appealed the Jones County Circuit Court's dismissal for lack of prosecution, Marsh requested the bankruptcy court find that Parra and her counsel were "in civil contempt for violating the 1986 Orders, the 2015 Enforcement Order, and the January 2018 Order, through continued pursuit of claims against Marsh in the Mississippi Action via the Motion for Reconsideration and Parra Appeal." *In re Johns-Manville Corp.*, 666 B.R. 476, 483 (Bankr. S.D.N.Y. 2025).

Ultimately, the bankruptcy court sanctioned Parra and her counsel with the attorney's fees for Marsh's litigation. *Id*. at 489. "If attorneys' fees are not paid in full within fourteen days after entry of the order granting attorneys' fees and the Parra Appeal has not been withdrawn, Respondents must pay an additional per diem monetary sanction in the amount of $1,000 per day." *Id*. The bankruptcy court ultimately set this amount at $65,481.60, which was paid. The $1,000-a-day sanction was stayed pending appeal of the finding of civil contempt in the United States District Court for the Southern District of New York. On July 30, 2025, the district court entered an order dismissing the federal court action based on a joint "Stipulation of Voluntary Dismissal" filed by Parra and Marsh agreeing to dismiss the action against Marsh with prejudice.

Nearly simultaneously, Marsh and Parra filed with this Court a motion to dismiss due to a settlement. *See supra* note 2. The company and its related entities were dismissed from Parra's state action on August 7, 2025. *Id*.

14

pursued with diligence, regardless of the relatively momentary times that forward movement was enjoined in federal court. The trial court was well within its discretion in finding that dismissal was proper for lack of prosecution.

## CONCLUSION

¶43.    We find no error in the grant of dismissal to any of the defendants, and the trial court's order dismissing the entire cause of action was not an abuse of discretion.

¶44.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**