# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-30529

—————————

IN THE MATTER OF PATRICK L. MCCONATHY AND PATRICIA CHAPMAN MCCONATHY,

*Debtor*,

AMERICAN WARRIOR, INCORPORATED; HEARTLAND OIL, INCORPORATED; MID CONTINENT RESOURCES, INCORPORATED,

*Appellants*,

*versus*

FOUNDATION ENERGY FUND IV-A, L.P.; FOUNDATION ENERGY FUND IV-B HOLDING, L.L.C.; DOLORES JO MATSON TRUST; ROGER MELVIN MATSON TRUST; WILLIS J. MAGATHAN,

*Appellees*,

_____

AMERICAN WARRIOR, INCORPORATED; HEARTLAND OIL, INCORPORATED; MID CONTINENT RESOURCES, INCORPORATED,

*Appellants*,

*versus*

BLACK STONE MINERALS COMPANY, L.P.; ENTECH ENTERPRISES, L.L.C.,

*Appellees*,

_____

AMERICAN WARRIOR, INCORPORATED; HEARTLAND OIL, INCORPORATED; MID CONTINENT RESOURCES, INCORPORATED,

*Appellants,*

*versus*

BLACK STONE MINERALS COMPANY, L.P.; ENTECH ENTERPRISES, L.L.C.,

*Appellees,*

_____

AMERICAN WARRIOR, INCORPORATED; HEARTLAND OIL, INCORPORATED; MID CONTINENT RESOURCES, INCORPORATED,

*Appellants,*

*versus*

FOUNDATION ENERGY FUND IV-A, L.P.; FOUNDATION ENERGY FUND IV-B HOLDING, L.L.C.; DOLORES JO MATSON TRUST; ROGER MELVIN MATSON TRUST; WILLIS J. MAGATHAN ESTATE,

*Appellees.*

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 5:22-CV-5769, 5:22-CV-5771,
5:22-CV-5772, 5:22-CV-5773

_____

2

Before JONES, CLEMENT*, and WILSON, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:

In this appeal from a bankruptcy court decision, American Warrior, the defendant in a Kansas oil and gas title suit, seeks to leverage *whom* it may have to pay into *what forum* will decide the parties' dispute. The Debtors, to be sure, lacked integrity in concealing ownership of their interest in the properties thirty years ago. But as the current bankruptcy matter has evolved, AWI settled with the Debtors' trustee, there is no bankruptcy issue remaining between other plaintiffs and AWI, and the bankruptcy court permissively abstained. We find no reversible error in the bankruptcy court or district court decisions and accordingly AFFIRM.

## I. BACKGROUND

Patrick and Patricia McConathy ("Debtors") filed a bankruptcy case in Louisiana in 1990 but failed to disclose their undivided working interests and leasehold rights in various tracts of land covering more than 3,000 acres in Kearny County, Kansas. The Debtors' bankruptcy case was re-opened twice over the decades.

The third reopening occurred in 2021 on the initiative of American Warrior ("AWI"), when discovery in a Kansas state court lawsuit revealed previously undisclosed property of the estate. The lawsuit was filed in 2019

---

* JUDGE CLEMENT concurs in all but Section III.A. She would hold that, regardless of whether the McConathys' co-plaintiffs in the Kansas litigation technically violated the automatic stay by bringing the Kansas suit, AWI has not shown that the bankruptcy court abused its discretion by declining to void the Kansas litigation as to the McConathys' co-plaintiffs, consistent with Section III.C. of this opinion.

No. 23-30529

by the Debtors (and other plaintiffs including Foundation Energy Appellees) against AWI and other defendants ("Kansas Litigation").[1]

During discovery, AWI learned that the Debtors had declared bankruptcy but did not include the Kansas oil and gas interests in their bankruptcy schedule. AWI was thus aware of the bankruptcy "defect" regarding the Debtor's nondisclosure as early as April 2020, but did not move to re-open the bankruptcy proceeding until January 2021 at an allegedly crucial juncture in the litigation.

On January 24, 2021, the bankruptcy court entered an order granting the motion to reopen, which stated that "[p]ursuant to 11 U.S.C. § 362, the automatic stay is hereby in effect and all actions involving property of the bankruptcy estate are hereby stayed." Despite this order, the Debtors and their lawyers (who are also counsel to other plaintiffs in the Kansas Litigation) continued to prosecute the Kansas Litigation in violation of the automatic stay. The Chapter 7 trustee then successfully moved, under an agreed order, to stay the entire Kansas Litigation pending further order of the bankruptcy court.

---

[1] The basic facts of the Kansas Litigation are as follows:

AWI had obtained 100% ownership of oil and gas leases and working interests in more than 3,000 acres pursuant to a Kansas state court default judgment against a number of possible owners. As a result, AWI drilled and produced oil and gas worth more than $7 million from the properties. The Debtors and other plaintiffs, some of whom were represented by the Debtors' counsel, sued to recover damages (the Kansas Litigation), asserting that because of notice and service issues, the default judgment was unenforceable. The precise extent of plaintiffs' separate interests, however, were intermingled and conflicting.

Black Stone Appellees in this case became third parties to the Kansas Litigation only when AWI joined them and other parties on a distinct theory of adverse possession in 2020.

No. 23-30529

In May 2021, non-debtor plaintiffs and third-party defendants in the Kansas Litigation, including the Foundation and Black Stone Appellees, moved to modify the stay. The Bankruptcy Court denied the motion in June 2021. In doing so, the bankruptcy court explained that any adjudication of rights and royalties in the Kansas Litigation could have an impact on the property of the estate under Section 362(a)(3) of the Bankruptcy Code because the estate's property rights were hopelessly intermingled with the other plaintiffs' claimed interests. *See* 11 U.S.C. § 362(a)(3); The bankruptcy court also concluded that the moving parties failed to make a showing of "cause" to lift the stay under 11 U.S.C. § 362(d)(1). Foundation Energy and Black Stone Appellees did not appeal the June 2021 Order.[2]

In April 2022, the Chapter 7 trustee filed an adversary proceeding on behalf of the estate against all parties in the Kansas Litigation. The adversary proceeding sought determination of the nature and fractional ownership of the Kansas mineral lease rights at issue in the Kansas Litigation. That proceeding ultimately led to a settlement between the trustee and AWI, under which the trustee (on behalf of the bankruptcy estate) transferred all its rights to AWI. In exchange, AWI paid $175,000 to the trustee, released all its claims against the estate, and agreed to pay an additional $50,000 to the trustee "in the event that the Estate's rights conveyed to AWI by virtue of this compromise are ultimately determined to be free and clear of any Net Profits Interest claim or Net Profits Interest burden as currently being asserted and claimed in the Kansas Litigation." The bankruptcy court granted the motion to compromise over the limited objections of Black Stone.

───────────────────────

[2] The automatic stay was modified by agreement in November to allow the deposition of an elderly witness for the purposes of the bankruptcy proceedings and the Kansas Litigation.

No. 23-30529

Around the same time, AWI had moved for civil contempt sanctions under 11 U.S.C. § 105(a) against the Debtors and two of their lawyers, on the basis that that their filing and continued prosecution of the Kansas Litigation, in spite of their prior knowledge of the bankruptcy case, violated the automatic stay. AWI also sought a discretionary declaration under Section 105(a) that the Kansas Litigation was void *ab initio*. Foundation Energy countered with a motion to annul the stay.

The bankruptcy court ruled on both motions in a single memorandum opinion in May 2022. The court deemed the Debtors and two of their lawyers in contempt of court as alleged and stated its intention to impose monetary sanctions against the lawyers but not the Debtors.[3] The bankruptcy court went on to deny AWI's void *ab initio* claim, concluding that AWI failed to adequately allege a violation of the stay by non-debtor co-plaintiffs in the Kansas Litigation. As to Foundation Energy's motion to retroactively annul the stay, the court rejected it because Foundation should not be afforded a "third bite at the apple" for such relief. But the bankruptcy court observed that "the moving parties may no longer care whether the stay is annulled" in light of the "court's ruling that AWI failed to adequately plead a violation of the stay by the non-debtor co-plaintiffs." These rulings also were not appealed by any party.

After approving the AWI-trustee settlement in July 2022, the bankruptcy court asked the non-debtor parties to file an abstention motion in

---

[3] In August 2022, the bankruptcy court imposed sanctions of $67,868.10 on the Debtors' attorneys for fees related to prosecuting the Debtors' claims in violation of the automatic stay. Significantly, the court reiterated that all fees related to the representation of non-debtors should be excluded from the sanctions calculation because "[s]uch services would have been performed regardless of the claims asserted by the Debtor and the Partnership."

the adversary proceeding and/or a motion to determine whether the automatic stay had been terminated. The Foundation and Black Stone parties filed separate motions asserting the same rights; both motions were opposed by AWI. The motions sought confirmation under 11 U.S.C. § 362(j) of the Bankruptcy Code that the automatic stay had terminated due to the estate's transfer and relinquishment of its Kansas mineral lease interests, as well as both permissive and mandatory abstention pursuant to 28 U.S.C. § 1334(c)(1) and (2). At a hearing on October 5, the bankruptcy court reaffirmed its previous rulings that the non-debtor parties did not violate the automatic stay:

> The non-debtor parties did not violate the automatic stay by filing their claims in the Kansas litigation or pursuing them in the Kansas state court before this bankruptcy case was reopened. *To be absolutely clear, this Court never held or even suggested that the non-debtor parties [violated] the automatic stay.* Instead, I ruled that the automatic stay prevented the non-debtor parties from adjudicating their claims in state court after the bankruptcy case was reopened.

(emphasis added).

The next day, the bankruptcy court signed four orders, which are the subjects of the current consolidated appeal. In explaining the orders, the bankruptcy court concluded that following the estate's settlement with AWI, property of the estate was no longer at issue, and the *adjudication* of non-debtor claims in the Kansas Litigation had only been stayed because those claims "were hopelessly intertwined with the estate's claims." The bankruptcy court emphasized again that "*the non-debtor parties did not violate the automatic stay in any way*," and the Kansas Litigation was not void *ab initio*. The court ordered that no stay "is in effect with respect to any claim, cause of action, or defense asserted by or against any non-debtor party" in

the Kansas Litigation, and it granted the motion to terminate the automatic stay or deem the stay terminated under 11 U.S.C. §362(j).

The bankruptcy court further decided to permissively abstain from the Kansas Litigation under 28 U.S.C. § 1334(c)(1), providing the following reasons:

1. The issues presented in this adversary proceeding are substantially similar to those presented in a lawsuit pending in the 25th Judicial District Court in Kearny County, Kansas styled *Foundation Energy Fund IV-A, LP, et al. v. American Warrior, Inc., et al.*, Case No. 19-CV-0011 (the "Kansas litigation");

2. The Kansas litigation involves the identical parties or nearly identical parties;

3. The Kansas litigation was filed prior to this adversary proceeding;

4. The Kansas litigation has not been removed or referred to this court and there is no statutory basis to remove or refer that litigation to this court;

5. The parties to the Kansas litigation are not stayed from pursuing their claims and defenses in that litigation and there is no statutory basis for this court to stay the non-debtor parties from pursing their claims in that litigation;

6. This adversary proceeding does not involve any property of the estate, the debtor, the trustee or any creditor of the estate;

7. There will be no effect on the administration of the estate if this court abstains from the adversary proceeding;

8. State law issues will predominate over bankruptcy issues (in fact, there are no bankruptcy issues presented in the adversary complaint);

9. There is a high degree of remoteness to the main bankruptcy case;

10. This adversary proceeding is not a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2); and

11. Certain parties in this adversary proceeding have asserted the existence of a right to a jury trial.

AWI appealed the orders to the district court, which affirmed in a succinct opinion, concluding that the Kansas Litigation was not void *ab initio*; the non-debtors did not act in violation of the stay; and an official annulment was not required in this case.

## II. STANDARD OF REVIEW

This court "appl[ies] the same standard of review as did the district court: the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, de novo." *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc). This court reviews abstention decisions based on the law and case law applicable at the appropriate time.

## III. DISCUSSION

AWI's multiple arguments necessarily flow from its contention that the Kansas Litigation was void *ab initio* because of the Debtors' undisclosed mineral interests. We disagree with AWI's interpretation of the scope of the stay, its *res judicata* theory of the June 2021 bankruptcy court order refusing to lift the stay, and its insistence that only a formal annulment order could "retroactively validate" the Kansas Litigation. Finally, based on this court's

case law and our rule of orderliness, we lack jurisdiction to review the court's permissive abstention in favor of the Kansas Litigation.

*A. Scope of the Automatic Stay*

The following discussion echoes much of the district court's sensible interpretation of the bankruptcy court's handling of these issues. To summarize, the bankruptcy court did not err in limiting any violation of the automatic stay to the Debtors and their counsel.

First, and most important, the bankruptcy court never held that the Kansas Litigation as it pertains to non-debtor plaintiffs was void *ab initio*. In January 2021, the court was faced with AWI's information about undisclosed assets on a thirty-year-old case. The bankruptcy court imposed a stay prophylactically on the entirety of the Kansas Litigation to prevent an adverse effect on the property of the estate, where the estate's interests were "hopelessly intertwined" with other parties' claims against AWI in the Kansas Litigation.

Second, as the district court put it, the bankruptcy court repeatedly distinguished between "the claims of the Debtor, which were invalid, and the claims of the non-debtors, which were merely put on pause while the property of the estate was properly managed." Certainly, this is correct. As the bankruptcy court explained, "[t]he automatic stay does not last forever . . . In this case, the stay prohibiting the adjudication of the non-debtor claims in the Kansas litigation lasted until the estate's claims were settled." And in any event, the Black Stone Appellees could not possibly have violated the stay by being impleaded in the Kansas Litigation after AWI brought a third-party action against them.

Proof of the bankruptcy court's discerning approach is that it rejected AWI's motion for sanctions against the non-debtor plaintiffs for violating the automatic stay. The court also found that AWI did not even adequately allege

that those parties had violated the stay. Consistently with the distinction the court drew between the Debtors' malfeasance and the innocence of non-debtor plaintiffs, the court's sanction award against counsel was geared to restoring fees charged to the Debtors but not to counsel's fees for representing non-debtors. The court explained that the latter fees would have been incurred in the Kansas Litigation regardless of the Debtors' participation. AWI failed to appeal this award. This again confirms the bankruptcy court's view that the claims asserted by the non-debtor Appellees in the Kansas Litigation did not violate the automatic stay to begin with.

Third, even if the Debtors were similarly situated to the non-debtor Appellees in regard to the Kansas Litigation before the AWI-trustee settlement was finalized, a bankrupt debtor and non-bankrupt parties are not subject to the same automatic stay analysis. This precept is well established, although the analysis usually distinguishes among debtor and non-debtor defendants in litigation. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204–05 (3d Cir. 1991) ("All proceedings in a single case are not lumped together for purposes of automatic stay analysis."); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor 'even if they are in a similar legal or factual nexus with the debtor.'") (quoting *Maritime Elec Co.*, 959 F.2d at 1205); *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n.4 (5th Cir. 1986) ("The well established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants."). The same principle would appear to apply here, where the debtor is a co-plaintiff with non-debtor parties.

Thus, at least after the settlement occurred, the bankruptcy court correctly surmised that further litigation in Kansas could not impair the Debtors' estate. This analysis is consistent with the Supreme Court's interpretation of Section 362(a)(3) from *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158, 141 S. Ct. 585, 590 (2021), which described the "most natural reading" of Section 362(a)(3) as "prohibit[ing] affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." The Court in *Fulton* also repeatedly defined Section 362(a)(3) as preventing *collection* efforts, noting that Section 362 "prohibits *collection* efforts outside the bankruptcy proceeding that would change the status quo," *id.* at 160, 141 S. Ct. at 591 (emphasis added), just as the automatic stay was broadly designed to halt "efforts to *collect* from the debtor outside of the bankruptcy forum," *id.* at 156, 141 S. Ct. at 589 (emphasis added). Once the settlement between AWI and the trustee was approved by the bankruptcy court, there was no risk of "collection efforts" against the Debtors that would alter the status quo because the Debtors' interests and those of the non-debtor parties were no longer "hopelessly intertwined." And the amount that might be owed to the trustee from AWI, although contingent, was liquidated and certain.

In addition, AWI's contention that the Kansas Litigation was void *ab initio* is inconsistent with AWI's own behavior, because AWI waited almost eight months from the time it first became aware of the "bankruptcy defect" to bring it up before the bankruptcy court. Moreover, AWI never appealed the bankruptcy court's rulings recognizing the continued validity of the Kansas Litigation—in particular, the May 2022 ruling that denied AWI's motion to have the Kansas Litigation declared void *ab initio*.

For these reasons, the bankruptcy court did not err in holding that the Kansas Litigation was not void *ab initio* simply because the Debtors, one of many parties to the litigation, failed to disclose that their claim was based on

illegally hidden assets of their 1990 bankruptcy estate. And the court did not later err when it formally held the automatic stay terminated or in terminating it. The Debtors are no longer a party to the Kansas Litigation, and AWI is not a creditor of the Debtors. AWI's only interest in maintaining bankruptcy court jurisdiction is to achieve a favorable venue, not to pursue or protect estate assets or the integrity of their disposition according to the Bankruptcy Code. But, as this court has explained, "[t]he Bankruptcy Code's automatic stay is designed to ensure the orderly distribution of assets by temporarily protecting the property of the debtor's estate from the reach of creditors." *In re Chesnut*, 422 F.3d 298, 300 (5th Cir. 2005).

## B. Finality for Appealability and Res Judicata

AWI's next major contention is that the bankruptcy court's order refusing to lift the stay in June 2021 is final and *res judicata* as to the Appellees because they did not appeal. But AWI must also necessarily render ineffective the bankruptcy court's October 2022 Order, from which it appeals, that terminates or cancels the automatic stay. To achieve its objectives, AWI relies on two Supreme Court cases, *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 140 S. Ct. 582 (2020) and *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195 (2009). AWI argues that under *Ritzen*, the June 2021 Order refusing to lift the stay became final when the Appellees failed to appeal, and under *Travelers*, it became *res judicata.* AWI insists that consequently, all subsequent efforts by the Appellees to alter, modify, or terminate the stay and proceed with the Kansas Litigation are barred by *Ritzen* and *Travelers*.

We disagree. AWI's position elides the distinction between "finality" for the purposes of appealability and "finality" for the purposes of *res judicata*. These are related, but separate concepts. Thus, "finality for purposes of appeal is not the same as finality for purposes of preclusion."

No. 23-30529

*Bell v. Taylor*, 827 F.3d 699, 707 (7th Cir. 2016) (citing 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4432, Westlaw (databased updated Apr. 2023) [hereinafter Wright & Miller]); *see also Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1340–41 (Fed. Cir. 2013) ("Definitions of finality cannot automatically be carried over from appeals cases to preclusion problems.").

Read more narrowly, as it should be, *Ritzen* stands only for the proposition that bankruptcy lift-stay motions are discrete proceedings within core bankruptcy jurisdiction and that denials of such motions are "final" for purposes of appealability. Indeed, the Supreme Court in *Ritzen* affirmed a Sixth Circuit decision that considered only whether the denial of a stay relief motion was final pursuant to 28 U.S.C. § 158(a). *In re Jackson Masonry, LLC*, 906 F.3d 494, 501–03 (6th Cir. 2018). The Supreme Court in *Ritzen* also noted that this court was among the "majority of circuits and [] leading treatises regard[ing] orders denying such motions as final, immediately appealable decisions." 589 U.S. at 42, 140 S. Ct. at 589 (citing *In re Lieb*, 915 F.2d 180,185 n.3 (5th Cir. 1990)). *Ritzen*'s discussion of finality for appealability purposes in bankruptcy cases did not reach implications for *res judicata*. Accordingly, that decision does not hold that orders concerning the automatic stay are "final" for all future lift-stay motions involving the same property between the same parties, regardless of changes that befall the bankruptcy estate. Moreover, if AWI's argument is taken at face value, then Section 362(d), which allows parties to petition for a modification of a stay "for cause," would become a nullity, as a bankruptcy court's initial decision to impose a stay would be unalterable.

AWI's argument also misreads *Travelers*. The Supreme Court's "narrow" holding in that opinion, although also arising from a bankruptcy case, had nothing to do with the scope of the automatic stay or appealability. 557 U.S. at 155, 129 S. Ct. at 2207. Rather, *Travelers* stands for the

straightforward proposition that parties who were in privity with the original litigants cannot collaterally attack a bankruptcy court's subject-matter jurisdiction decades after the orders were entered, so long as the parties originally before the bankruptcy court "were given a fair chance" to advance these arguments at the earlier proceeding. *Id.* at 153, 129 S. Ct. at 2206.

AWI's argument would fundamentally misapply the automatic stay, which "is not intended to stay forever." *In re Duwaik*, No. 17-CV-00142-MSK, 2017 WL 4772819, at *4 (D. Colo. Oct. 20, 2017), *aff'd*, 730 F. App'x 715 (10th Cir. 2018). As the Second Circuit put it, "bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). "This flexibility derives from bankruptcy's equitable roots," and is consistent with equity jurisprudence from this court and the U.S. Supreme Court. *In re Cypress Fin. Trading Co., L.P.*, 620 F. App'x 287, 289 (5th Cir. 2015). "Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018) (quoting *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 850 (5th Cir. 2006)); *see also United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S. Ct. 460, 462 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.").

Just as new facts or circumstances may warrant the modification of an injunction on behalf of a party that previously failed to obtain relief or modification, new facts or circumstances may also warrant an order modifying or lifting a bankruptcy automatic stay for a party previously denied relief. *Res judicata* does not tie a bankruptcy court's hands to prevent the protection, disposition, or sale of estate property by lifting or modifying the automatic stay as changed conditions warrant. Similarly, although the filing

of a bankruptcy case automatically stays litigation outside of bankruptcy court that involves the debtor and other parties, the stays are frequently superseded by further orders allowing its continuation. Here, for instance, new facts emerged because AWI and the trustee resolved the Debtors' interests and settled their dispute after the trustee commenced litigation in bankruptcy court. Notably, at that point in July 2022, the bankruptcy court invited Appellees to file motions concerning modification or termination of the stay. AWI's argument thus necessarily would limit not only the parties to the bankruptcy but even the court itself from considering modifications of an order concerning the automatic stay.

By the same token, the un-appealed orders in this case are completely distinct from the final Chapter 11 orders that were collaterally attacked over a quarter-century later in *Travelers*. While the collateral attack advanced by the respondents in *Travelers* could not "be squared with *res judicata* and the practical necessity served by that rule," nothing about the arguments of non-debtor Appellees in this case would undermine the value and "practical necessity" of *res judicata*. 557 U.S. at 154, 129 S. Ct. at 2206.

The Bankruptcy Code is not a straitjacket. Although *Ritzen* clarified that parties may appeal the denial of a lift-stay motion, their failure to do so immediately does not prejudice their ability to obtain stay relief later, when the legal and factual landscape of the bankruptcy case changes.

At oral argument, AWI emphasized that because the bankruptcy court's earlier orders through June 2021 declining to lift the automatic stay as to the non-debtor Appellees were not entered "without prejudice," they became "final" and unmodifiable for all time because they were never appealed by the Appellees. *See Ritzen*, 589 U.S. at 47 n.4, 140 S. Ct. at 592 n.4 (declining to decide whether finality for appellate purposes attaches to orders denying stay relief "without prejudice"). We decline AWI's

invitation to transform the phrase "without prejudice" into magic words that bankruptcy courts must include in all orders fully or partially denying lift-stay requests, lest the courts lose the ability to later modify the scope of an automatic stay in response to changes in the bankruptcy case's legal and factual landscape. As briefing before the Supreme Court in *Ritzen* noted, "in bankruptcy practice . . . designations such as 'with prejudice' and 'without prejudice' are not customarily included in orders granting or denying relief." Corrected Brief for Petitioner at 23, *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 140 S. Ct. 35 (2019) (No. 18-938), 2019 WL 5095813, at *23. The reality of bankruptcy practice, in which legal and factual circumstances change rapidly, and the roots of the automatic stay in equity's rules for injunctions, require preserving a bankruptcy court's ability to use its "plastic powers to modify or condition an automatic stay." *E. Refractories*, 157 F.3d at 172. We reject AWI's overbroad reading of *Ritzen* and its attempt to narrow the ambit of bankruptcy court authority.

*C. Annulment Order*

Even if we were to accept AWI's next argument, contrary to fact and the bankruptcy court's repeated conclusions, that the Foundation Appellees violated the automatic stay when they filed the Kansas Litigation, this court has expressly refused to hold that all actions taken in violation of the automatic stay are automatically void. Instead, the court has held that they are merely *voidable*:

> If everything done post-petition were void in the strict sense of the word, these provisions would either be meaningless or inconsistent with the specific mandate of section 362(a). We reject both alternatives in concluding that filing a complaint in an unknowing violation of the automatic stay is voidable, not void.

*Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir. 1989). Thus, under *Sikes*, an act taken in violation of the automatic stay has not been "voided" until it has been pronounced "void" by a court of competent jurisdiction. No such declaration was made in this case, despite AWI's motion seeking to accomplish that result. Because the bankruptcy court never affirmatively declared the non-debtor Appellee's voidable act of filing the Kansas Litigation "void," the bankruptcy court did not need to retroactively bless the litigation *ab initio*.

AWI cites several cases for the proposition that the bankruptcy court was required to formally annul the automatic stay. *See Sikes*, 881 F.2d at 178–79, *In re Cueva*, 371 F.3d 232, 236–38 (5th Cir. 2004), and *In re Chesnut*, 422 F.3d at 303–07. AWI further notes that when the court refused to retroactively annul the automatic stay as the Appellees requested, the order was not appealed. But the bankruptcy court expressly observed that the Appellees may "no longer care" that such relief was being denied. The only possible explanation for this comment is the bankruptcy court's belief that the Appellees had been provided with all the relief they needed with its ruling that AWI failed to allege, much less prove, that the non-debtor parties violated the stay. In other words, as we have explained above, a favorable ruling on the annulment motion would be unnecessary because there had been no finding that the non-debtor parties violated the stay in the first place.

Instead, the decision in *Sikes* affords bankruptcy courts discretion to enable the continuation of litigation outside bankruptcy:

> Having concluded that the initial filing of the Sikes complaint was merely voidable, *we must determine whether the bankruptcy court intended to validate the filing of the original complaint*. We conclude that it did. . . *The court specifically allowed actions to commence and allowed pending actions to proceed*. We are bound to assume, absent clear demonstration to the contrary, that the

bankruptcy court was aware of the filing date of the respective complaints. *Aware of the filing date of the Sikes complaint, the bankruptcy court permitted it to proceed.* . . . The order authorized the identified claims to "go forward," "commence," "proceed."

When the Sikes[s] filed their complaint they were unaware of the bankruptcy petitions. Upon learning of the automatic stay they moved the court for relief from the stay. The bankruptcy court granted that relief. *We find the court's intent clear—it was permitting these claims to proceed to judgment.* We decline to accept Global's argument that the order merely allowed the Sikes permission to refile their complaint. *We perceive no valid purpose to be served by requiring that the Sikes file more papers with an already burdened court* . . . .

*Sikes*, 881 F.2d at 179–80 (emphases added). Hence, *Sikes* recognizes that a bankruptcy court has the power to retroactively validate actions taken in violation of the automatic stay and approves of a bankruptcy court order that has that exact effect without the use of the magic word "annulment." *Id.* This is consistent with the black letter principle that "Congress . . . has *granted broad discretion to bankruptcy courts to lift the automatic stay to permit enforcement of rights.*" *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) (emphasis added). *See also In re Cueva*, 371 F.3d at 236 (noting the "broad discretion granted bankruptcy courts" under Section 362(d)); *In re Chesnut*, 422 F.3d at 303 ("by providing bankruptcy courts broad discretion to lift stays . . . Congress has evinced an intent to constitute the bankruptcy courts as the proper forum for the vindication of creditor rights.").

For the *Sikes* court, the bankruptcy court's manifestly clear intent to lift the automatic stay and allow the plaintiffs' suit to go forward was

sufficient. So, it is here.[4] We approve the manifestly reasonable decision of the bankruptcy court to allow the Kansas Litigation to go forward without a purely formalistic annulment order.

AWI's citation to *Chesnut* is beside the point. *Chesnut* is limited to cases where the creditor *knowingly* sought to acquire "arguable" property of the estate, 422 F.3d at 300–04. In this case, the non-debtor Appellees had *no knowledge* of the bankruptcy defect at the date of filing, and the degree to which non-debtor Appellees' claims were adverse to the debtor's was unclear at the time of filing. As such, this case may well fall into the carveout described by *Chesnut*: "[n]ot every bankruptcy petition, with an attendant claim of a right in property, will transform what is obviously not property of the estate into arguable property" and thus violate the automatic stay. 422 F.3d at 306.

*D. Abstention*

The relevant abstention statute, which was in place when the Debtor filed for bankruptcy in 1990, states:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a

---

[4] The same principle applies to this court's decision in *In re Jones*, 63 F.3d 411, 412–13 (5th Cir. 1995), which affirmed the bankruptcy court's order that merely modified, but did not annul, an automatic stay, to retrospectively bless an eviction that violated the automatic stay.

case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. *Any decision to abstain made under this subsection is not reviewable by appeal or otherwise.* This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

28 U.S.C. § 1334 (1990) (emphasis added). This version of the provision governs despite a significant amendment in 1994, because Congress decreed that the amendment would act prospectively only. Bankruptcy Reform Act of 1994, PL 103–394, § 702, 108 Stat. 4106, 4150 (1994).

The parties dispute whether the language in (c)(2) that limits appellate review of mandatory abstention decisions "under this subsection" also extends to permissive abstention decisions under § 1334(c)(1)—or on a more granular level, whether "subsection" refers to all of § 1334(c) or just to § 1334(c)(2).

*In re Adams*, 809 F.2d 1187, 1188 (5th Cir. 1987), held that this court had no jurisdiction to review a permissive abstention decision under § 1334(c)(1). That holding binds us pursuant to the court's rule of orderliness. AWI, however, contends that *Adams* did not specifically address AWI's statutory interpretation argument, identified above. *See, e.g.*, *Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021) ("[T]he rule of

orderliness applies where (1) a party raises an issue and (2) a panel gives that issue reasoned consideration."). Further, AWI points out that this court issued later decisions reviewing permissive abstention orders from bankruptcy courts. *See Matter of Gober*, 100 F.3d 1195, 1206–07 (5th Cir. 1996); *In re Barone*, 96 F.3d 1444 (5th Cir. 1996) (unpublished). Not only do these decisions impermissibly conflict with *Adams*, but they also failed to cite or acknowledge *Adams*. Last, AWI notes that two other circuits have adopted AWI's interpretation of the scope of appellate review for this 1990 provision. *See In re Ben Cooper, Inc.*, 924 F.2d 36, 38 (2d Cir. 1991); *In re China Peak Resort*, 847 F.2d 570, 572 (9th Cir. 1988) (*vacated on other grounds sub nom. Calif. State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844 (1989)).

We are unpersuaded. *Adams* had to implicitly determine that Subsection (c)(2)'s limit on appellate review must encompass Subsection (c)(1). Whether *Adams* made that determination according to AWI's principles of interpretation and, in fact, whether *Adams* wrongly construed the provision are of no moment. *Adams* is the earliest on-point decision by this court holding that appellate review of a bankruptcy court's permissive abstention decisions is proscribed under the 1990 iteration. This court is bound by that first-in-time decision.

For the foregoing reasons, the judgments of the bankruptcy court and district court are AFFIRMED.